(October 3, 1913.)

## LAURA McKINNON, Appellant, v. JOHN McILHARGEY et al., Respondents.

[135 Pac. 826.]

REAL ESTATE—ACTION TO QUIET TITLE—APPEAL—MOTION TO DISMISS—EVIDENCE—REJECTION OF.

1. Where a party is named as one of the defendants and the record fails to show that the summons was served on him or that he appeared in any manner in the case, and neither the findings of fact nor the judgment refer to him in any manner, it is not necessary to serve the notice of appeal on him, as he is not an adverse party under the provisions of sec. 4808, Rev. Codes.

2. Where an action is brought to quiet title to real estate and the trial court rejects certain evidence that ought to have been admitted, and it appears to the appellate court that if all the evidence offered by the plaintiff had been admitted the plaintiff would not have been entitled to any relief, the judgment will not be reversed on the ground that the court rejected certain evidence that ought to have been admitted.

3. If a court makes an error in the rejection of evidence but arrives at a correct conclusion in the case, provided the rejected evidence had been admitted, the judgment will not be reversed because of such error.

4. *Held,* that if the rejected evidence had been admitted it would have been reversible error for the trial court to have entered judgment for the plaintiff.

5. *Held,* that the judgment must be modified to the extent of requiring McIlhargey to pay the taxes and interest as stated in the opinion.

APPEAL from the District Court of the Eighth Judicial District for Bonner County. Hon. Robt. N. Dunn, Judge.

Action to quiet title to real property. Judgment for defendant. *Affirmed* and modified.

H. E. Worstell, for Appellant.

Wm. J. Costello and H. H. Taylor, for Respondents.

Counsel cite no authorities on points decided.

SULLIVAN, J.—This action was brought to quiet title to 160 acres of land situated in Bonner county, which county was formerly a part of Kootenai county. The complaint contains the allegations usual in an action to quiet title. The defendant, the railroad company, answered, setting up its title to its right of way across said land. The defendant McIlhargey by answer denies the allegations of the complaint as to the ownership of said land in the plaintiff, and alleges that he purchased said land from one Ferguson in 1905, paying therefor $1,500, and that he has been the owner and in the actual possession of said land ever since.

. The cause was tried to the court without a jury and judgment entered, quieting the title to said land in the railroad company in its right of way and in the defendant McIlhargey for the remainder of the land. From that judgment this appeal is taken.

A motion to dismiss the appeal has been made and is based on the ground that Ignatz Weil, who is named as one of the defendants, and who, it is contended, was served with summons in the action, was not served with notice of appeal. So far as the record is concerned, it does not show that Weil was ever served with summons or that he appeared in the case in any manner. Neither the findings of fact nor the judgment refer to him. That being true, he was not an adverse party under the provisions of sec. 4808, Rev. Codes, and it was not necessary to serve the notice of appeal upon him and the motion to dismiss must therefore be denied.

The plaintiff, to support her case, offered in evidence a tax sale certificate, issued by the tax collector of Kootenai county on the 14th of July, 1904, for taxes amounting to $6.73, being the taxes on said property for the year 1903. Said certificate shows that said property was sold at tax sale to the county and that one Wm. McKinnon thereafter, in 1906, purchased said tax sale certificate from the county. Said tax certificate,

on objection by the defendants, was rejected by the court. She thereafter offered in evidence a quitclaim deed from Wm. McKinnon to herself for said property, including other property, dated the 4th of March, 1911, which offer was rejected by the trial court. She also offered in evidence a tax deed, executed by the assessor and tax collector of Bonner county, dated the 26th of August, 1912, conveying said land to Wm. McKinnon, which tax deed the court rejected and refused to admit in evidence. It appears that Wm. McKinnon, the grantee in said deed, had died some six months prior to the execution of the last-named deed. Plaintiff also offered in evidence a tax deed dated February 2, 1911, executed by the assessor and *ex-officio* tax collector of Kootenai county, conveying said land to Wm. McKinnon, which offer was rejected by the trial court.

It appears from the record that neither the appellant nor her grantors had paid any taxes on said premises since Wm. McKinnon was entitled to a deed under said tax certificate; that the defendant, McIlhargey, had resided on said land ever since he purchased it in 1905, and that McKinnon, the owner of the tax certificate, was entitled to a tax deed as early as 1907, but made no application for same until 1911, four years after he was entitled to it; that he stood by and permitted McIlhargey to remain in possession of said land and improve the same and pay all taxes thereon for at least four years, and now the plaintiff comes into a court of equity and wants her title quieted to said land under that state of facts. The equities are all with the defendants, and a court of equity, under the facts of this case, will not lend its aid to one who has so long slept on his rights and permitted other people to remain in possession of land the length of time the railroad company and McIlhargey have been in possession of the land involved in this case. In a case of this kind the plaintiff must offer sufficient evidence to establish his right to the relief demanded.

Conceding that all of the rejected evidence had been admitted, it is clear that the plaintiff would not have been entitled to a judgment in this case, and it is a well-established rule of

law that if the evidence offered by the plaintiff in support of his complaint and rejected by the court, if taken into consideration in the determination of the case, would not have entitled the plaintiff to recover, the case will not be reversed on appeal because of an error in rejecting such evidence. If the court makes an error in rejecting evidence and arrives at a correct conclusion in the case, the judgment ought not to be reversed. The plaintiff has come into a court of equity for equitable relief, and the record shows that all of the equities are with the respondents.

It is contended that appellant has at least a right to recover the amount of taxes paid for the tax sale certificate of 1904 and the penalty thereon. Under the prayer of the complaint, the court has authority to enter judgment in her favor and against McIlhargey for the amount so paid, with interest thereon at the rate of 18 per cent per annum for three years, or up to the time that Wm. McKinnon would have been entitled to a tax deed under said certificate.

The judgment must therefore be affirmed so far as it quiets the title in the defendants, and modified to the extent of entering judgment against McIlhargey for the amount of taxes paid for said delinquent certificate and the penalty thereon, with interest at the rate of 18 per cent per annum thereon for three years, which judgment shall be a lien upon said real estate, exclusive of said railway right of way, and execution may issue for its collection. Each party to pay his own costs on appeal.

Ailshie, C. J., concurs.

STEWART, J., Dissenting.—I dissent in this case, and for the purpose of considering the questions presented on this appeal, it will be necessary to state the pleadings in the case and the questions urged upon appeal, and these are as follows:

This action was brought by the plaintiff against John McIlhargey, Ignatz Weil and Spokane International Railroad Company, a corporation, for the purpose of quieting title to certain real property in Kootenai county.

It is alleged in the complaint that the defendants claim an interest in said land. It is also alleged that the railroad company is a corporation, existing under the laws of the state of Washington, and doing business in Bonner county.

The defendant, John McIlhargey, filed an answer and denies the plaintiff's ownership and denies that he wrongfully and without right claims an interest in the land, and admits that the claim of the defendant is made adverse to plaintiff's title, but denies that his claim constitutes a cloud upon plaintiff's title; and affirmatively alleges that he is the owner in fee and in possession of the land in question, except as to the right of way of a railroad company, and alleges that the plaintiff has no title, and asks that judgment be entered declaring that plaintiff has no estate or interest whatsoever, and that title of defendant is good and valid as a claim against any claim or lien of the plaintiff; that the plaintiff and all other persons claiming under her be enjoined and debarred from asserting any interest or claim whatsoever in and to said land and premises adverse to defendant.

The railroad company also filed an answer, and denies that the plaintiff is the owner of the land and denies that the defendant is wrongfully or without right claiming an interest, which is a cloud upon plaintiff's title, and affirmatively alleges as a defense that the defendant is a corporation and is organized under the laws of the state of Washington, and has complied with all the laws of the state of Idaho relating to foreign corporations, and that in the year 1905, or more than six years next preceding the commencement of this action, defendant entered into and upon said land and surveyed, laid out, located, erected and constructed a line of railroad over the land and went into possession and control, and ever since has had exclusive possession and control of the same; that on the 22d day of August, 1905, defendant purchased from James C. Ferguson, through conveyance by good and sufficient warranty deed, the title to said land, and the same was duly recorded in Kootenai county; that the plaintiff wrongfully and without right claims some right and title to said lands, but that the claim of plaintiff is unlawful and wrongful and adverse to the

defendant; that said defendant has been in possession of said land since purchasing the same, and has paid all taxes levied or assessed against the same, and asks that title be quieted.

The plaintiff replies to the answer of defendant McIlhargey and denies that defendant is the owner in fee or at all of said land, and admits that plaintiff claims an interest and asserts title in the same; and denies that plaintiff is without right or has no title or interest or estate or any lien upon the premises.

An amendment to the answer of the railroad company was filed, wherein the railroad company added to its answer the following paragraphs as a part thereof:

"1. That the cause of action of plaintiff is barred by the provisions of secs. 4036 and 4037 of the Code of Civil Procedure of Idaho.

"2. That by reason of the facts herein stated the claim and action of the plaintiff is barred by the provisions of secs. 4036 and 4037 of the Code of Civil Procedure of Idaho."

Upon these issues the cause was tried before the court and findings of fact and judgment were entered against the plaintiff, that the plaintiff take nothing herein and that the title of the defendant the Spokane International Railway Company, a corporation, be quieted as against the plaintiff and all persons claiming through or under her the property described; that the plaintiff has no estate, right, title or interest whatever in or to any of the lands described or any part or portion thereof; that the plaintiff or all persons claiming through or under her are hereby enjoined and debarred from asserting any interest or claim whatsoever in or to said lands described; that the railroad company recover from plaintiff costs and disbursements; that the defendant James McIlhargey recover from Laura McKinnon his costs and disbursements.

It will be observed in this connection that the defendant Weil did not appear in said cause or file any pleadings or make any defense whatever, and the judgment in no way refers to any right or title of Weil, and no issue between Weil and any of the other parties to the suit as to adverse interest in said land or lien upon said land was adjudicated or in any way determined by the court in said action as to the respective

rights of either Weil or the other parties. The plaintiff appeals from the judgment, and service was made upon McIlhargey and the Spokane International Railway Company. No service was made upon Weil.

After the appeal was completed the defendants John McIlhargey and the railroad company moved to dismiss the appeal upon the following grounds: That Weil, named as a defendant in the action, and who was served with summons and complaint, was not served with a copy of the notice of appeal, and that the motion was based upon the records and files and an affidavit filed by Weil. Weil filed an affidavit to the effect that he was not served with the notice of appeal.

The first question to be determined is whether the failure to serve Weil is a ground for dismissing the appeal.

The title of the case is Laura McKinnon v. John McIlhargey, Ignatz Weil, Spokane International Railway Company, a corporation. The complaint alleges in paragraph 2, "the said defendants and each of them wrongfully and without right claim an interest in said land, and that the claims of each of said defendants are unjust and without foundation in fact or law; and that said claims are made adversely to plaintiff's ownership and title and constitute a cloud upon plaintiff's title."

The record does not show that Weil appeared in the case at any time after the filing of the complaint. No demurrer, answer or other appearance was filed by him. The trial court in the judgment granted no relief to Weil or against him either in favor of the plaintiff or any of the codefendants, and he was in no way affected by the judgment in any way whatever. The record does not show whether he was served with summons or not.

Sec. 4808, Rev. Codes, provides: "An appeal is taken by filing with the clerk of the court in which the judgment or order appealed from is entered, a notice stating the appeal from the same, or some specific part thereof, and serving a similar notice on the adverse party, or his attorney," and this court has many times construed the statute and universally

held that a notice of the appeal shall be issued and served on the adverse party.

"Adverse party" was construed by this court, and the cases of this state and the state of California under a similar statute were cited in the case of *Diamond Bank v. Van Meter,* 18 Ida. 243, 108 Pac. 1042, 21 Ann. Cas. 1273, and that case quoted from the case of *Nelson-Bennett Co. v. Twin Falls etc. Co.,* 13 Ida. 767, 92 Pac. 980, 13 Ann. Cas. 172, wherein this court says: "The statute intends that a notice of appeal should be served upon all parties who have an interest in conflict with a reversal of the judgment, or whose rights would be adversely affected by a reversal of such judgment."

. Applying the rule of these cases, I am satisfied that Weil was not an adverse party under the statute and the cases cited from opinions of this court, and that the motion to dismiss the appeal should be overruled.

The specifications of error are designated as follows: 1. The court erred in rejecting plaintiff's offer of tax deed issued by Kootenai county. 2. The court erred in rejecting plaintiff's offer of tax deed issued by Bonner county. 3. The court erred in rejecting plaintiff's offer of tax certificate. 4. The court erred in rejecting plaintiff's offer of quitclaim deed from William McKinnon. 5. The court erred in rendering judgment and decree for the defendants.

I will first consider the ruling of the court as to the admission of the tax sale certificate.

Sec. 4538, Rev. Codes, provides: "An action may be brought by any person against another who claims an estate or interest in real property adverse to him, for the purpose of determining such adverse claim."

This court has announced the rule that under this statute a party having an interest, whether legal or equitable, is entitled to maintain the action. (*Fry v. Summers,* 4 Ida. 424, 39 Pac. 1118; *Johnson v. Hurst,* 10 Ida. 308, 77 Pac. 784.)

In *Johnson v. Hurst, supra,* this court approves the case of *Pennie v. Hildreth,* 81 Cal. 130, 22 Pac. 399, wherein the supreme court of California, under the same statute, holds as follows: "The language of the code is broad enough to cover

every interest or estate in land of which the law takes cognizance.''

This doctrine is also supported by the following California cases: *Pioneer Land Co. v. Maddux,* 109 Cal. 633, 50 Am. St. 67, 42 Pac. 295; *Tuffree v. Polhemus,* 108 Cal. 670, 41 Pac. 806.

From the statute and these authorities, I am satisfied that the holder of a tax sale certificate, after the expiration of the period of redemption, is the owner of the equitable title of the land.

The following sections of the Rev. Codes, in my judgment, specifically provide: Sec. 1759, that after receiving the amount of taxes and costs the collector must make out in duplicate a certificate, dated on the date of sale, stating (when known) the name of the person assessed, a description of the land sold, the amount paid therefor; and in sec. 1761 the statute provides for the issuing and delivering of a certificate of sale and what the certificate shall contain; and sec. 1762 provides that on filing the certificate with the *ex-officio* auditor and recorder the lien vests in the purchaser and is only divested by the payment to the county treasurer, on certificate of the auditor, for the use of the purchaser, the whole amount of money paid for such certificate; sec. 1763 provides, if the property is not redeemed within three years from the date of sale, the assessor or *ex-officio* tax collector, or his successor in office, must make to the purchaser or the other person lawfully entitled thereto, upon demand, a deed to the property, reciting in the deed substantially the matters contained in the certificate; and sec. 1764 provides that the matters recited in the certificate of sale must be recited in the deed.

These various sections of the statute clearly provide that the tax sale certificate creates a lien and that the actual record title is to be completed upon the issuance of the deed, and notwithstanding the record title is not passed until the deed is issued, I think the issuing of the certificate creates the lien and gives to the holder of the certificate an estate or interest in real property which may be enforced under the provisions of sec. 4538, Rev. Codes.

In support of this rule see *Eaton v. Supervisors of Manitowoc County*, 44 Wis. 489; *Curtis Land & Loan Co. v. Interior Land Co.*, 137 Wis. 341, 129 Am. St. 1068, 118 N. W. 853.

The case of *Beggs v. Paine*, 15 N. D. 436, 109 N. W. 322, 8 L. R. A., N. S., 157, was cited by this court in the case of *White Pine Mfg. Co. v. Morey*, 19 Ida. 49, 112 Pac. 674, and in the case cited the question of tax titles is very fully discussed, and in the *White Pine Mfg. Co. v. Morey* case the same question was presented to the court, as the defendant against whom the action to quiet title was brought by affirmative defense and counterclaim sought to have his title established under tax proceedings and relied both upon tax deeds and tax certificate. The deeds, for one reason or another, were rejected, leaving his case to stand solely upon the tax sale.

Blackwell on Tax Titles, vol. 1, secs. 638, 639 and 640, deals with this question, and cites a great many cases, and speaking of the certificate as evidence the author says: "It is *prima facie* evidence of title in the purchaser, and may be made *prima facie* evidence of regularity in the proceedings, or even conclusive evidence, except as to essentials with which the legislature itself could not dispense. The record of sale will as to the manner of sale prevail over the recitals in the certificate. As to such matters the deed is conclusive; wherefore the memorandum of the treasurer's adjournment of the sale cannot be received to contradict or render invalid the tax deed." The author states that the certificate of sale of lands by the United States is *prima facie* evidence of title in the purchaser, and in the same connection the author announces the rule to be that a law enacting that the certificate shall be received in all courts and places as *prima facie* evidence of the regularity and validity of the sale and of the title of the purchaser under the sale, and that the certificate shall only be affected as evidence of the regularity or validity of the sale by establishing the fact that said property was not subject to taxes, or that taxes had been paid previous to sale, or that

the property had been redeemed, must be construed so as not to exclude proof that no tax was legally assessed.

In the case of *Beggs v. Paine, supra,* the supreme court of North Dakota, in discussing the effect of a tax sale deed, says: "Assuming, then, that the proceedings were all regular and that more than sixty days had elapsed since the service of the notice of expiration of redemption, but no deed had issued, we would have a case presented where the former owner, although nominally holding the naked record title, had lost all his proprietary rights, including the right to redeem, and the tax sale purchaser had become vested with all the rights of an owner and entitled to a deed transferring the record title. Unless we are to regard form as superior to' substance, it is manifest that the purchaser must be held to be the owner. . . . . There must necessarily be a greater or less interval of time elapsing between the termination of the former owner's rights and the delivery of the deed. It is inconceivable that the actual ownership is vested in no one, even for an instant of time. If the proceedings were regular, the defendant was entitled to a deed, and could compel the delivery thereof by *mandamus* if the officer refused to execute it. The title evidenced by such a deed subsequently executed would relate back to the time when the grantee was entitled to receive the deed. . . . . The grantee in such a case was permitted to show by parol that he was entitled to the deed, and hence had the title on a day earlier than the date of the execution of the deed."

Counsel for respondent calls attention to sec. 1764, Rev. Codes. We have referred to this section heretofore, that the deed shall contain the matters recited in the certificate of sale. The tax sale certificate offered in evidence states the facts required by sec. 1759, Rev. Codes, with the exception that it does not contain the guaranty of the county or municipality as provided in said section. The tax certificate, however, does contain the preliminary steps stating the name of the person assessed, the description of the land sold, the amount paid therefor, that it was sold for taxes, giving the amount of the state and county tax, poll tax, costs and penalty, and also giv-

ing the amount of all taxes, penalties and costs of every city and town, village or independent school district and road district in the county that is authorized by law to collect revenue in a manner provided by law, and the year of the assessment, and specifies the time when the purchaser will be entitled to a deed. These are the steps required by this section leading up to the sale of the property, and these are the steps that are required to be stated in the certificate and the deed. The guaranty is merely directory, and is not a part of the proceedings which lead up to the sale. The guaranty is a liability of the county established by law, that if by any irregularity of a taxing officer the certificate be void, then the county or municipality will repay to the holder the sum paid therefor, with interest at six per cent per annum from the date of its issuance, and it is a liability created by the statute, and such liability is in no way affected by the failure to place the same in the tax certificate. The failure to embrace this language in the certificate is not a requirement which in any way affects the validity of the certificate.

I am of the opinion that the certificate of sale issued in accordance with the requirements of the law is *prima facie* evidence of title in the purchaser, and *prima facie* shows a lien upon the property; I am also of the opinion that said *prima facie* evidence may be overcome by evidence showing that the tax certificate fails to state the requirements of the statute and does not comply with the law. Such *prima facie* evidence will sustain a judgment quieting title, and a judgment may be entered upon such evidence quieting title in the owner of such tax certificate in the absence of a showing that the certificate is not true and that the necessary statutory steps leading up to the issuing of the certificate have not been complied with.

. I therefore hold that the trial court erred in refusing to admit as evidence the tax certificate dated the 7th day of September, 1906, signed "T. L. Quarles, by D. E. Danby, deputy auditor of Kootenai county," and offered in evidence and marked plaintiff's exhibit "D."

Opinion of the Court—Stewart, J., Dissenting.

It is also contended that the tax certificate imports no validity and is not *prima facie* evidence of the regularity of any steps in the proceedings leading up to its issuance, and that one relying upon a tax certificate must prove as a part of his own case and in his own behalf the strict regularity of all the steps and proceedings leading up to it. From what has been said upon this question, I am satisfied that the certificate, when stating the facts required by the statute, is sufficient without showing the proceedings leading up to its issuance, and makes a *prima facie* case when nothing is proven or shown that the statements in the certificate are not true and in accordance with the law.

I will next consider specification No. 1, the rejection of plaintiff's offer of tax deed issued by Kootenai county.

The first contention urged by appellant is, that it contains a statement that the amount of the county and state taxes was $4.99, adding to this 25 cents penalty, and the total amount the land was sold for was $6.73, making an excess of $1.49. Counsel cite a number of authorities in support of the proposition that property cannot be sold for a sum of money in excess of the taxes legally due and costs. While these authorities support such rule, they do not apply to the facts in this case. The tax certificate shows that the property was sold for a total tax, penalty and costs of $6.73. This is composed of "state and county tax and penalty $4.99; road tax and penalty $1.49; advertising 25 cents." Counsel are in error in their statement that $1.49 was in excess of the actual tax of $4.99. It appears, however, that the total tax and penalty was $6.48, and cost of advertising 25 cents, making a total tax, penalty and costs, $6.73, for which the property was sold at tax sale, so this objection has no merit.

I find from an examination of the deed that it complies with sec. 1764, Rev. Codes, and was duly acknowledged as re-' quired by sec. 1765. The scrivener in describing the items of the total tax omitted to insert the road tax of $1.49, and only states the $4.99, and state and county tax and penalty and cost of advertising, 25 cents, but states the total amount as $6.73, the actual tax as stated in the certificate. We do not think

that this omission renders this conveyance void. This was merely a clerical omission, and inasmuch as the statement is made in the deed of the actual amount of the sum for which the land was sold, although not properly itemized, it is sufficient.

The trial court erred in not admitting the tax deed offered from Kootenai county to the predecessor in interest of plaintiff.

I will now consider specification 2 in the court's ruling in denying the introduction in evidence of the tax deed issued by Bonner county. Sess. Laws, 1907, p. 47, creating Bonner county, provides, in sec. 10, "the creation of Bonner county as hereinbefore provided shall not affect in any manner the collection of any unpaid tax upon any property within its territory for the current expenses of Kootenai county, or for any other purpose, or for any school or road district, village or other municipal taxes, or for any special tax for any purpose whatsoever levied prior to the creation of Bonner county; and all such unpaid taxes shall be collected and payment thereof enforced by the officers of Kootenai county, in the same manner and with the same effect as if the territory of the county of Bonner had remained and continued a part of the county of Kootenai; and any and all money thus collected shall if wholly belonging to Kootenai county be apportioned and divided as in the manner provided for in sec. 6 of this act, between the counties of Kootenai and Bonner; and all funds levied prior to the creation of Bonner county for the benefit of any school or road district, village or other municipality within Bonner county shall be paid directly and immediately by the county treasurer of Kootenai county without division as provided hereinbefore."

In sec. 9 it is provided that Kootenai county shall pay to Bonner county all funds coming into the hands of the officers of Kootenai county "from delinquent and unpaid taxes levied prior to the creation of Bonner county." And in sec. 6, in which the bonded and floating indebtedness is provided for, further reference to unpaid taxes is made showing the completeness of the scheme to provide that the entire taxes levied

prior to the creation of Bonner county should be left undistributed in the power and authority of Kootenai county.

From the evidence in the case, the plaintiff acquired title under the tax sale certificate and tax deed of Kootenai county. The tax certificate shows that the property was sold for taxes on the 14th of July, 1904, and that the tax sale certificate was assigned to William McKinnon in 1906. Therefore, at the time the act creating Bonner county went into effect Kootenai county had received the money for taxes and had done everything in connection with the collection of it except the final act of executing the deed. The time for redemption had not expired until after the taking effect of the act, and the act creating Bonner county, in sec. 6, specifically provides that all money in the hands of any officer of Kootenai county at the time of the creation of the county was to be applied upon the payment of the floating indebtedness, and if there should be any remainder, it was to be divided between the two counties proportionately by payment from Kootenai county to Bonner county.

Under these various provisions, Bonner county had nothing whatever to do with the proceedings concerning the taxes levied prior to its creation, and there are no limitations in the act creating Bonner county which in any manner or degree affect or limit the application of the general tax statutes to Kootenai county concerning prior taxes, and there is no authority of law except the act creating Bonner county and the general statutes of the state governing the taxes collected in the county of Kootenai before the act creating Bonner county, except the statute creating Bonner county, and that act provides that the creation of Bonner county shall not affect in any manner the collection of any unpaid tax upon any property within its territory levied prior to the creation of Bonner county.

This position is clearly supported by other acts that have been passed by the legislature creating new counties out of existing counties. I refer to Sess. Laws 1907, p. 40, creating Twin Falls county; Sess. Laws 1911, p. 49, creating Clearwater county.

The various provisions of these acts show clearly the methods adopted by the legislature in adjusting these questions, by giving the new county power with respect to prior taxes or by leaving such power with the old county, and in the creation of Bonner county such matters are reserved to the county of Kootenai under the laws of the state.

The court's ruling upon the admission of said deed was not error.

In the case of *White Pine Mfg. Co. v. Morey, supra,* the court deals with the former owner's rights upon the expiration of the period of redemption, and holds that the issuing of a tax deed is the ministerial act which the owner of the land under tax proceedings is entitled to have done as a matter of right, and clearly requires in the present case that if the tax deed from Kootenai county is not in proper form and in accord with the statute, it is the duty of Kootenai county to issue a proper deed, and if the county declines to do so, it can be compelled to do so by writ of *mandamus.*

I therefore hold in this case that the judgment should be reversed and a new trial granted.