(No. 5520. January 6, 1931.)

ROBERT BODENHAMER, Respondent, v. PACIFIC FRUIT & PRODUCE COMPANY, a Corporation, Appellant.

[295 Pac. 243.]

James R. Bothwell and W. Orr Chapman, for Appellant.

Hodgin & Hodgin, for Respondent.

VARIAN, J.—On April 3, 1928, respondent leased eighty acres of farm land in Jerome county to one Albert Brown, for the term of eleven months, for $2,000 cash rent. On the same day Brown executed his promissory note for $2,000 to respondent, payable November 15, 1928, with interest at the rate of seven per cent per annum, evidencing said rent payment. At the same time, he executed to respondent a crop mortgage upon the crop to be grown upon said lands in the year 1928, securing the payment of said note. The mortgage was duly recorded in Jerome county, and thereafter, on October 18, 1928, a certified copy thereof was recorded in Twin Falls county. On June 16, 1928, appellant entered into a marketing contract with Brown, whereby it agreed to advance him not to exceed $1400 to be used in growing and harvesting a crop of potatoes, thirty acres of rurals and forty acres of russets. Brown therein makes appellant his exclusive sales agent, gives it the first option to purchase when the crop is ready for shipment, and agrees to repay any advancements of cash or expenses of sale, with interest. The following clause appears in the contract:

"2. The grower covenants that he is the owner or lessee of said property, and that there are no encumbrances against the crop growing or to be grown thereon, except: $2000.00 cash rent and 1200 sacks of potatoes to be returned for seed."

In June, 1928, prior to making the agreement with appellant, Brown applied to respondent for $285 to pay the freight upon a car of seed potatoes. Respondent said he could not let him have it; that he was short, and asked if Brown could not obtain it from the First National Bank of Twin Falls. Brown replied that he could, except for the crop mortgage heretofore mentioned. Respondent said he could probably arrange some way, but did not advance the

money. He did not know that Brown had made the contract with appellant until the fall when the potatoes were being dug. Appellant advanced Brown something over $4,500, and when the potatoes were dug Brown caused them to be hauled to his cellar in Kimberly, Twin Falls county, where they were sorted, sacked, inspected, and shipped by rail consigned to appellant who marketed them, submitting statements from time to time to Brown showing the gross receipts on account of each car sold, and the expenses of marketing and sale, such as freight, inspection, brokerage, commissions, and exchange, together with the net profit remaining. The potatoes were shipped from about October 20, 1928, up to about January 7, 1929, inclusive, about which time respondent demanded of appellant payment of his mortgage debt of $2,000 and interest. This action for conversion was commenced on January 14, 1929, and resulted in a verdict and judgment for plaintiff Bodenhamer for the amount of his debt and interest, from which defendant appeals.

Appellant alleges error in defining the measure of damages in refusing to give appellant's proposed instruction, concluding as follows:

" . . . . You will find the market value of the potatoes at the time and place they were converted by the defendant, if you find they were converted, less the expense of handling and marketing such potatoes."

This court has held that one who purchases a crop from the mortgagor without the mortgagee's consent is liable to the latter in conversion for the reasonable value of the crop so purchased, up to the amount due on the mortgage debt. (*Adams v. Caldwell Milling & Elevator Co.*, 33 Ida. 677, 197 Pac. 723; *Twin Falls Bank & Trust Co. v. Weinberg*, 44 Ida. 332, 54 A. L. R. 1527, 257 Pac. 31), which is in accord with the general rule.

"In trover by a mortgagee against the mortgagor or one holding under him for the conversion of the mortgaged property, the measure of damages is ordinarily held to be the amount of the mortgage debt and interest, not to exceed the value of the property." (11 C. J., p. 619.)

The witness Brown testified that the market price of potatoes such as those involved here, was seventy-five cents per hundredweight, f. o. b. cars; that it cost between nineteen and twenty-two cents per hundredweight to sort, from eleven to thirteen cents for sacks per hundredweight and that there was an inspection charge of $3 per car. Another witness, DeLong, a potato buyer, testified that the market prices at that time for potatoes of this class, were from seventy-five to eighty-five cents per hundredweight for the Number One grade, and for Number Two grade from thirty-five to forty-five cents per hundredweight, all f. o. b. cars, less sorting, sacking, and loading. Appellant's manager testified that it received from Brown 571,310 pounds of Number One grade, and 91,530 pounds of Number Two grade potatoes; that the cost of inspecting them aggregated $53.92; and after deducting freight, brokerage, commissions, inspection charges, etc., there remained a net return of $4,325.68, less certain additional items of expense amounting to approximately $54. Appellant also proved by the same witness that it advanced Brown for sorting these potatoes $783.90, and for sacks and twine $1,395.97, total $2,179.87. Disregarding the amounts the potatoes actually sold for, and computing their value at the rates testified to by respondent's witnesses, there still remains sufficient to satisfy the mortgage debt and interest (fixed by the jury at $2,116.60), after deducting the charges for sorting, sacking, handling, etc., in preparing the potatoes for shipment. It therefore is immaterial whether the jury considered these preliminary costs of preparing the potatoes for shipment, in arriving at their verdict. The court, in the instructions given, correctly stated the measure of damages as laid down by this court.

The court instructed the jury, in instruction No. 3, that if the jury found that defendant, without plaintiff's consent, converted certain potatoes included in plaintiff's chattel mortgage, duly recorded before the conversion in Jerome county, Idaho, " .... you will determine the quantity of such potatoes, and the reasonable market value thereof at the time and place of delivery to defendant, and render a

verdict for the plaintiff in the amount of his mortgage, together with interest at 7% per annum thereon from the date of delivery to the defendant, if not more than the reasonable market value of the potatoes at time and place of delivery.''

And in instruction No. 12:

'' . . . . the measure of damages will be the reasonable market value of the potatoes at the time and place of conversion by the defendant, in the amount of plaintiff's mortgage, with interest thereon, if such value equals or exceeds the amount of the mortgage, otherwise the limit of recovery will be the reasonable market value of such potatoes.''

Instruction No. 12–a reads:

''You are instructed by the court, gentlemen of the jury, that if you find from the evidence that the plaintiff did not consent to the sale of the potatoes to or the handling of such potatoes by the defendant, you will return a verdict in favor of the plaintiff for the sum of $2,000.00, with interest at the rate of 7% per annum from the date of the delivery of the potatoes to the defendant; and you will compute such interest to this date and add it to the said sum of $2,000.00.

''If, however, you find from the evidence that the plaintiff did consent to the sale of the potatoes to or the handling of the same by the defendant, your verdict will be in favor of the defendant.''

Appellant contends that instruction 12–a is misleading in that it tells the jury to find for plaintiff for the full amount of the mortgage debt and interest, irrespective of whether the market value of the potatoes exceeded said amount, or was less, and that the instruction conflicts with the instruction first above referred to.

Directing the jury to find an amount for plaintiff was not error in the light of the evidence, it appearing that the reasonable market value of the property converted exceeded the amount of the mortgage debt and interest. (See *Goldensmith v. Worstell*, 35 Ida. 679, 208 Pac. 836.)

Appellant requested the following instruction:

"The court instructs the jury that if you find from the evidence that the mortgagee, (mortgagor) Brown, sold the potatoes in question to the defendant, or delivered them to defendant to be sold by defendant for him, and at the time of the sale, or the delivery for sale to the defendant, the plaintiff knew that it was the purpose and intent of Brown to sell the potatoes for the purpose of procuring money with which to pay the mortgage indebtedness to the plaintiff, then you may infer that plaintiff consented to such sale, and by such acts waived the lien of his mortgage as to such potatoes and you should find for the defendant."

Failure to give the foregoing is assigned as error. The proposed instruction is objectionable as commenting upon the weight of the evidence, and infringes upon the province of the jury in determining a fact to be found by them, and the court did not err in refusing to give it.

The court fully instructed the jury as to waiver of the mortgage lien and estoppel to enforce it; also as to consent to sale by the mortgagee, express or implied, and the jury found against appellant on all the issues raised by its answer.

Appellant's counsel called Brown, the mortgagee, as a witness, when the following questions were asked and answers given:

"Q. Mr. Brown, do you remember being in my office, in this city, along last winter after this suit was brought?

"A. Yes, sir.

"Q. And do you remember that Mr. Lasley was there at that time?

"A. Yes, sir, I reckon that is the gentleman.

"Q. Yes, this gentleman over here (indicating)? .

"A. Yes, sir.

"Q. And another gentleman named Horsley, do you remember him?

"A. I don't remember him. I remember there was some fellow.

"Q. Now, I will ask you if you, at that time and place, stated to me, in the presence of those two gentlemen, that

just before you entered into this finance contract with the Pacific Fruit & Produce Company, you had a conversation with Mr. Bodenhamer in which he told you that he couldn't let you have the money, that he couldn't finance you, and for you to go ahead and get it where you could, and that he would release to the extent of any advancement you got. Do you remember whether you made that statement in my office at the time I have referred to?"

"Mr. Hodgin: That is objected to on the ground that it is, on its face, an attempt to impeach his own witness; and further, that it would not be binding upon the plaintiff here unless he was present; and it is cross-examination of defendant's own witness, and is argumentative."

This objection was sustained by the court, apparently upon the first ground. Again, appellant's counsel proceeded in the examination of his witness Brown:

"Q. Mr. Brown, at the time and place referred to in the former question, didn't you also state, in the presence of Mr. Lasley and Mr. Horsley and myself, that in the fall you had informed Mr. Bodenhamer that you were selling these potatoes to the Pacific Fruit & Produce Company, and that he told you to go ahead?

"Mr. Hodgin: We object to that on the ground it is an attempt to impeach the defendant's own witness.

"The Court: The objection is sustained."

Later, the witness Lasley being on the stand, appellant attempted to prove that Brown had in fact made the statements imputed to him, but on objection was not permitted to answer. These rulings are assigned as error. The matter was purely hearsay, and, if admissible at all, only upon the theory of impeaching Brown, whose previous testimony was to the effect that Bodenhamer did not consent to a sale of the potatoes to appellant, and denied that there was any understanding that Bodenhamer would release the lien of his mortgage in favor of appellant. He did testify afterwards, on cross-examination, that when he asked Bodenhamer for $285 for freight on seed potatoes, the latter told him he could not let him have it, but if Brown could get it at the bank he

would arrange it by releasing part of the crop. Nothing was ever done about this, and no money was borrowed from the bank.

C. S., sec. 8036, reads:

"The party producing a witness is not allowed to impeach his credit by evidence of bad character, but he may contradict him by other evidence, and may also show that he has made, at other times, statements inconsistent with his present testimony."

C. S., sec. 8039, provides the method by which impeachment by inconsistent statements may be had, and must be complied with before the question can be put to the witness. (*Hilbert v. Spokane etc. R. R. Co.*, 20 Ida. 54, 116 Pac. 1116.)

The rule is well settled that impeaching evidence of prior contradictory statements does not tend to establish the truth of the matter contained therein. It can be considered only as tending to affect the credibility of the witness sought to be impeached thereby. (27 Cal. Jur., p. 169, sec. 143; 6 Jones on Evidence, 2d ed., p. 4813; 28 R. C. L., p. 645; 22 C. J., p. 206; *Portland Cattle Loan Co. v. Gemmell*, 41 Ida. 756 (766), 242 Pac. 798; *State v. Bush, ante,* p. 166, 295 Pac. 432 (filed December 20, 1930); *Zipperlen v. Southern Pac. Co.*, 7 Cal. App. 206, 93 Pac. 1049; *Mattson v. Maryland Casualty Co.*, 100 Cal. App. 96, 279 Pac. 1045.) And, if requested, a party is entitled to have the jury so instructed. (*Worley v. Spreckels Bros., etc.*, 163 Cal. 60, 124 Pac. 697 (702); *People v. Corey*, 8 Cal. App. 720, 97 Pac. 907.)

The theory under which the impeaching evidence is admitted is that appellant was surprised at the unfavorable testimony given by the witness called by him, or the witness is hostile, or the party in calling him has been entrapped to his prejudice. (See 6 Jones on Evidence, 2d ed., p. 4810 et seq.) But this rule does not extend to a mere failure to testify to all the facts he was expected to testify to. (28 R. C. L., sec. 229, p. 646; 40 Cyc., p. 2696; *Ferris v. Todd*, 124 Wash. 643, 215 Pac. 54.) This is true in juris-

dictions having statutes similar to ours. (6 Jones on Evidence, 2d ed., p. 4812.) See *Agalianos v. American Cent. Ins. Co.,* 62 Cal. App. 349, 217 Pac. 107, 113, holding that the testimony must be damaging and prejudicial. It must be damaging, not merely negative. (*People v. Floyd,* 78 Cal. App. 11, 247 Pac. 917.)

In the instant case, the witness Brown did not testify unfavorably to appellant; he simply failed to testify as strongly for it as it was anticipated he would testify. Neither does it appear that appellant was entrapped into calling him, nor that the witness was in fact hostile. In any event, the only possible effect of the rejected evidence was to impeach the witness Brown. If we consider all of Brown's testimony as neutralized, there is still no sufficient evidence in the record to sustain appellant's contention that Bodenhamer consented to the sale to appellant, or waived the lien of his mortgage as against appellant's cash advances. It does not appear from the record that appellant's defense failed by reason of the exclusion of this evidence, or that the evidence admitted, together with that rejected, established such defense. The error, if it was error, is therefore not prejudicial (*Spongberg v. First Nat. Bank,* 15 Ida. 671, 99 Pac. 712; *McKinnon v. McIlhargey,* 24 Ida. 720 (722), 135 Pac. 826), and the case should not be reversed on that account.

Judgment affirmed. Costs to respondent.

Lee, C. J., Givens and McNaughton, JJ., and Brinck, D. J., concur.