HOBSON, Justice.
Appellant was indicted for first-degree murder, and pleaded not guilty by reason of temporary insanity. The jury brought in a verdict of guilty of manslaughter, and later made a voluntary recommendation of extreme leniency. Appellant does not deny firing the shots which resulted six days later in his wife’s death, but testified that he could not remember the immediate circumstances surrounding the commission of the act charged.
The court appointed two' disinterested psychiatrists, Doctors Jarrett and Kells, to examine the appellant, and both testified at the trial. The following excerpts from the record in this case will illustrate the problems presented here. Doctor Jarrett testified in part as follows:
“My impression was that this man was, at the time in question on the evening of May 9, 1953, in a state of moderate alcoholism, moderate depression, and some emotional turbulence involving remorse and probably some resentment relative to his wife having left him with whereabouts unknown to him. In my opinion, the act in question was an impulsive outburst without previous formulation. However, in my opinion, he knew it was wrong to commit such an act and knew the nature and consequence of such behavior. The act itself was, in my opinion, obscured by an hysterical amnesia.
******
“Q. Then would I he correct in saying that in this particular case it is entirely possible that this man knew what was going on at the time he did it, but that afterwards thinking about it was so horrible to his mind that he developed this hysterical amnesia? A. From the information I have I would say that is probably what has happened.
“Q. Yes, sir. Now, I believe you stated that in your opinion at the time of this offense which is charged that he had sufficient use of his reason to understand the nature and consequence of the act? A. Yes.
“Q. And that he understood it was wrong for him to do the act? A. Yes.
“Q. He knew the difference between right and wrong at that time? A. Yes.
******
“It is my opinion that during the time this man made the appointment with his wife, went to see her, when he was riding in the car with her, there was no intimation that he had had any formulated opinion or premeditated concept that he was going to shoot her.
******
“My opinion was that he had an hysterical amnesia obscuring that, and by that I mean no conscious inability to recall the facts. In other words, the term itself implies that there is no deliberate effort to conceal information. * * *»
Doctor Kells testified in part as follows:
“Then you come to the question as to whether he knew right from wrong at the time or would know the consequences of his act. In a way that is unimportant, because his judgment was blunted by the emotions and he would not bother about thinking about the effects of his acts or right or wrong. In other words, he did not have a discerning mind or a deliberative mind. There was no deliberation present.
*316 ******
“Q. Doctor, did you say that at the time this happening took place that Mr. Warner had sufficient use of his reason to understand the nature and consequences of the act with which he is charged ? A. I don’t think that he did. I mention in my report that if somebody had been there to make him count up to 100, he could have, but he was blunted by this emotion and he did not take himself in hand and say, ‘Stop and see here,’ but he went blindly ahead.
“Q. I believe you state in your report, do you not, that at the time this thing took place that Mr. Warner was in contact with reality, was not insane in the loosely used and popular sense of the word; is that right? A. Yes, sir.
“Q. Now, wouldn’t you say that is similar to knowing the nature and consequences of his acts at that time? A. I think he knew what he was doing, I think he knew the environment, I think he knew who hé was dealing with. I have not heard the testimony and I don’t know if he had a gun or not, but if he did have a gun I would say I believe he knew he had it, but to him the consequences were somewhat immaterial because his vision was so narrowed by this emotional blunting that the rest of it was all immaterial.
“Q. Do you think he understood it was wrong for him to do it? A. I don’t think he gave that a thought. * * * ”
A careful reading of the testimony quoted above will show that while both witnesses concurred in the belief that appellant might have known what was happening at the time of the shooting, they took different views of the appellant’s interpretation of his own part in such events. While Doctor Kells testified in effect that appellant was insensible to right and wrong at the time of the shooting, Doctor Jarrett was of the clear and unequivocal opinion that appellant then knew the difference between right and wrong and understood that it was wrong to do the act. The, jury was charged fully, correctly, and with meticulous care in this case. No denial of a request to charge is depended upon by appellant here. Under authority of Brock v. State, Fla., 69 So.2d 344; Acree v. State, 153 Fla. 561, 15 So.2d 262; Crews v. State, 143 Fla. 263, 196 So. 590; and Davis v. State, 44 Fla. 32, 32 So. 822, the jury, as reasonable men, could have believed the testimony of Doctor Jarrett exclusively, insofar as it was inconsistent with that of Doctor Kells, and could lawfully have brought in the verdict which was rendered.
Appellant relies upon Britts v. State, 158 Fla. 839, 30 So.2d 363; Blocker v. State, 87 Fla. 128, 99 So. 250; Thomson v. State, 78 Fla. 400, 83 So. 291; and Armstrong v. State, 30 Fla. 170, 11 So. 618, 17 L.R.A. 484, in support of his contention that if the evidence is sufficient to raise, in the minds of the jury, a reasonable doubt as to the sanity of the accused, the presumption of sanity is overcome and the accused should be acquitted. This rule is supported by the authorities cited. It was included in the jury charge herein, and we do not question it. But the jury, acting under its instructions, apparently entertained no reasonable doubt.
While the jury’s recommendation of extreme leniency might have some bearing upon the jury’s view of the case, it cannot be translated into an expression of doubt. To apply appellant’s theory to this case, we would have to hold that the expert testimony should as a matter of law have caused the jury to entertain a reasonable doubt. This we cannot do, with due regard to the clear testimony of Doctor Jarrett that appellant knew right from wrong at the critical time, and knew it was wrong to commit the act. A study of the cases appellant cites will demonstrate that in all of them the facts showing insanity were stronger than *317 in the instant case, and the testimony pointed unerringly in one direction.
Affirmed.
DREW, C. J., and THOMAS and THORNAL, JJ., concur.