(No. 6730. April 25, 1940.)

STATE, Respondent, v. GEORGE WALTERS, Appellant.

[102 Pac. (2d) 284.]

Walter H. Anderson, Clyde M. Bowen and Gus Carr Anderson, for Appellant.

J. W. Taylor, Attorney General, R. W. Beckwith, E. G. Elliott, Lawrence B. Quinn and D. W. Thomas, Assistant Attorneys General, for Respondent.

AILSHIE, C. J.—Appellant, a quarter-breed Indian, was charged by information with the crime of murder in the first degree. Upon the trial thereof he was convicted of "voluntary manslaughter, recommending leniency." From the judgment sentencing him to a term in the state penitentiary, he has appealed.

The first three assignments of error are directed against the action of the court in overruling a challenge to the jury panel and a motion to quash the panel. These motions were made on the alleged grounds that the jury lists, which the statute requires to be made up by the board of county commissioners at the first regular meeting each year, had not been selected and prepared as required by law. The provisions of the statute regulating the making up of the annual jury list are as follows:

"2–301. *Compilation of jury list.* The board of commissioners of each county must, at their first regular meeting in each year, or at any other meeting, if neglected at the first, make a list of persons to serve as jurors in the district court of the county for the ensuing year.

"2–302. *Selections of persons for jury list.* In making up the jury list mentioned in section 2–301 the board of county commissioners must proceed to select and list from the poll lists of the several precincts in their respective counties, last returned to the clerk of their board, the names of a sufficient number of persons legally competent to serve as jurors so that said jury list will provide at least fifty jurors for each term of the district court appointed or directed to be holden in said county for the ensuing year; and in making such selection, they must take the names of such only as are not

legally disqualified or exempt from serving as jurors, who are of fair character, of approved integrity and of sound judgment. As nearly as may be, they must choose the names of residents from each precinct in the same proportion which the total of the poll lists for each precinct bears to the total of all the poll lists for the entire county, and they must not accept or reject the name of any person because of his religious or political affiliations or beliefs.''

It is contended that under the decisions of this court these issues cannot be urged on a challenge to the panel under sec. 19–1905, I. C. A. (*State v. Cosler,* 39 Ida. 519, 228 Pac. 277; *State v. McClurg,* 50 Ida. 762, 300 Pac. 898); it is clear, however, that they can be raised on a motion to quash the panel (*Pierre v. State of Louisiana,* 306 U. S. 354, 59 Sup. Ct. 436, 83 L. ed. 757; see, also, *Heitman v. Morgan,* 10 Ida. 562, 79 Pac. 225); and so we shall consider the whole question as raised on motion to quash the panel.

The gist of the contention made by appellant against the formation of the jury list is that, instead of its being made up by the ''board of commissioners'' *as such,* it was in fact made up by each individual commissioner preparing his own list, one selecting 150 names and the others each 75; and then having the names on the three lists placed in the jury box as the lists for the year 1939. The deputy clerk who acted as clerk of the board of county commissioners, while they were in session, testified that in January (1939) ''the Board of County Commissioners made up the list of jurors for jury service'' during the year. ''Each one made up their own list, individually.'' She was not sure as to whether the commissioner used the *registration* books or the *poll* books in making his list; nor was she sure that all the commissioners used either. She ''had no recollection of getting the book for Mr. Aljets or Mr. Jensen,'' two commissioners. She said that Mr. Hale, the other commissioner, ''made his up, as I recall, some time after the other two did, and I can remember. I didn't get the *poll* books; I got the *registration* books.''

She further testified that the names of those who voted as shown on the poll books were checked on the registration lists so that one consulting the registration books could readily tell

who voted. One of the commissioners testified that he used some of the names on the old list left over from the previous year, and also put on the lists *persons who asked to be placed on the jury list,* as he traveled throughout his part of the county.

It appears that it was necessary to make a list of 300 persons eligible to jury duty for 1939, and that it was agreed that the one commissioner should select 150 names and the others 75 names each. This was done because of the one commissioner representing the more populous district of the county. It nowhere appears that anyone's name was placed on the list who was ineligible or unfit for jury service for the year. The chief objection is made against each commissioner making a list of his own; and furthermore (a matter which will hereafter be discussed) that they discriminated in making their lists against Indians, Negroes, Greeks and Italians.

It would be useless to attempt to quote the testimony of the commissioners at length herein for the reason that it is disconnected, desultory and quite lengthy. The foregoing, however, is sufficient to illustrate the contention here made, namely, that the selection of this jury list was made by the commissioners *individually* and not by them *as a board of county commissioners;* in other words, that the entire board did not join in making the list. It must be conceded that the lists were originally made by the commissioners as above indicated. There is, however, a further and, we think, controlling circumstance. The statute, sec. 2–303, provides that:

"Certified lists of the persons selected to serve as jurors must at once be placed in the possession of the clerk of the district court."

This certificate is not made by the clerk of the board but is required to be made by the commissioners themselves after they have made up their lists. Section 2–304 requires the clerk "On receiving such lists" to

"file the same in his office, and write down the names contained therein on separate pieces of paper, of the same size and appearance, and fold each piece so as to conceal the name

thereon, and deposit them in a box to be called the 'jury box.' "

This *certified* list is the *official action* of the board and every inference to be drawn from the record is to the effect that such list was, or lists were, filed; otherwise there would probably have been no names in the jury box. Furthermore, this being a requirement of the statute, the presumption arises, in the absence of proof to the contrary, that it was complied with. (*Prothero v. Board of County Commrs.*, 22 Ida. 598, 603, 127 Pac. 175.)

On motion to quash a jury panel the burden of showing substantial actual or presumptive prejudice to the rights of defendant rests on the moving party and must be established by a preponderance of the proofs. (*Morris v. State,* 62 Okl. Cr. 337, 71 Pac. (2d) 514, 517; *Norris v. Alabama,* 294 U. S. 587, 55 Sup. Ct. 579, 79 L. ed. 1074.) We feel that appellant has failed to sustain the burden of proof cast upon him, and that his motion to quash was properly denied.

We do not think the facts disclosed in connection with selection of the jury list bring this case within the rule applied in *People v. Boston,* 309 Ill. 77, 139 N. E. 880 and *Walter v. State,* 208 Ind. 231, 195 N. E. 268, 98 A. L. R. 607, relied upon by appellant. Moreover, the latter case is based on a statute quite different from ours.

Appellant raises the further question, that the action of the commissioners in making up these lists tended to deny him the equal protection of the law under the fourteenth amendment to the federal constitution, for the reason that he, being an Indian, was discriminated against by the commissioners not placing the names of Indians on the jury list. It is well settled that "a systematic and arbitrary exclusion" of any class or race of people "because of their race and color constitutes a denial" of the "equal protection of the laws" to *anyone falling within that class,* who may be charged with crime and placed on trial therefor. (Fourteenth Amend. U. S. Const.; *Hale v. Kentucky,* 303 U. S. 613, 58 Sup. Ct. 753, 82 L. ed. 1050; *Pierre v. State of Louisiana,* 306 U. S. 354, 59 Sup. Ct. 536, 83 L. ed. 757; *Norris v. Alabama, supra; People v. Hines,* 12 Cal. (2d) 535, 86 Pac. (2d) 92; *Morris*

*v. State,* 62 Okl. Cr. 337, 71 Pac. (2d) 514; *Powell v. State,* 60 Okl. 267, 63 Pac. (2d) 113, 117; *Scott v. State,* 29 Okl. Cr. 324, 233 Pac. 776, 779.)

This case does not fall under the ban of the rule above stated for the reason that it does appear that the names of (it is thought), two Indians had been placed on the jury list and that the commissioners had no purpose or design of leaving Indians, as a race, off the list where they were otherwise qualified. It is furthermore urged that, since the defendant is only a *quarter*-breed Indian, he is more Caucasian than Indian and consequently the exclusion of Indians from the jury list would not have been a discrimination against him.

The fact that no Negroes, Creeks or Italians were placed on the jury list is not thought to be available to appellant here, for the reason that he is not a member of either of those races of people. (See annotations to *Hale v. Kentucky, supra,* pp. 1053–1082, at 1064.)

The record in this case amply justifies us in calling attention of the prosecuting attorneys of the state to the importance of advising their respective commissioners touching their duties in complying with the state law in the preparation of jury lists. There should be a substantial compliance with the statute in taking the names from the *poll* lists of the respective precincts and in the preparation of the lists by the *board* rather than by the individual members of the board. The action should be taken by the *board of commissioners* and the requirements of sec. 2–302 should be carefully observed.

It is next urged that the court erred in allowing the case to go to the jury on any higher or greater charge than battery. It is claimed that the information was fatally defective in not alleging *where* the victim of the battery died. The charging part of the information reads as follows:

"That the said George Walters on or about the 29th day of January, 1939, and before the filing of this information, at Pocatello in the County of Bannock, State of Idaho, then and there being, did then and there knowingly, wilfully, unlawfully and feloniously deliberately and premeditatedly and with malice aforethought, kill and murder one Louis Chavez,

a human being, by then and there wilfully, unlawfully, feloniously, deliberately, premeditatedly and with malice aforethought, strike, cut and bruise with an axe, then and there held in the hands of him, the said George Walters, which said striking, cutting and bruising as aforesaid, did then and there give him, the said Louis Chavez, a mortal wound from which he, the said Louis Chavez, did on or about the 29th day of January, 1939, die.''

We hold the information does charge, is reasonably definite terms, that the death occurred in Bannock county. *Inter alia* it says:

''That . . . . George Walters on or about the 29th day of January, 1939, . . . . in the County of Bannock, . . . . did then and there . . . . premeditatedly . . . . with malice aforethought, kill and murder one Louis Chavez, . . . . ''

The information here involved is not open to the same objections pointed out by Chief Justice Fuller as appearing in the indictment returned in *Ball v. United States*, 140 U. S. 118, 11 Sup. Ct. 761, 35 L. ed. 377.

 Finally, it is contended that the court erred in allowing the prosecutor to examine the state's witness Tulip concerning previous testimony he had given touching the facts of this case. The witness had testified at the preliminary examination though it does not appear just what his testimony was. The jury might have well inferred from the questions of the prosecutor and the answers of the witness, that he testified to being present at the time and place of the assault and witnessing facts which at the time of the trial he denied having any knowledge or memory about. However, the testimony he actually gave at the preliminary was not introduced nor was it denied by the witness. He simply denied having any recollection or memory of the incidents and facts about which the prosecutor interrogated him. We fail to find any prejudicial or substantial error in the action of the prosecutor. (See sec. 16–1207, I. C. A.; *Bodenhamer v. Pacific Fruit & Produce Co.*, 50 Ida. 248, 295 Pac. 243; *People v. Floyd*, 78 Cal. App. 11, 247 Pac. 917, 921.)

The judgment is affirmed.

Budge, Givens, Morgan and Holden, JJ., concur.