487 P.2d 946

**The STATE of Idaho, Plaintiff-Respondent,**

v.

**Lewis Calvin BROWN, Defendant-Appellant.**

**No. 10471.**

Supreme Court of Idaho.

Aug. 3, 1971.

Robert F. McLaughlin, Mountain Home, for appellant.

W. Anthony Park, Atty. Gen., and Martin R. Ward, Deputy Atty. Gen., Boise, and Fred H. Kennedy, Pros. Atty., Mountain Home, for appellee.

McFADDEN, Justice.

Lewis C. Brown was accused by information of the felony of assault with intent to commit murder, I.C. § 18–4015. After trial, the jury returned its verdict of guilty, and the district court entered judgment of conviction of the crime, and imposed a sentence of confinement in the state penitentiary for a term not to exceed three years. This appeal was taken from the judgment of conviction.

The events involved in this charge took place July 4, 1968, in the "Club Orbit," a bar in Mountain Home. On the afternoon of that date about 2:00 p. m., Richard L. Moss, then an air force sergeant, entered the club with LeRoy Perkins, another air force sergeant. They sat at the bar and ordered beer. They observed two other air force personnel, Sergeant Parker and Sergeant Thornton, who were shooting pool in the bar. Moss and Perkins started playing pool against the other two men, and continued to play for some time that afternoon.

Defendant Brown, a job corps trainee from the Mountain Home Job Corps Center, entered the bar with two of his associates, one of whom was under age and was requested to leave. Brown dropped or threw a glass to the floor, which broke, a piece of the glass striking Perkins, and an altercation broke out between Parker, Moss and the defendant, and continued until it finally flowed out into the street. In the

melee, Brown lost his shoes in the bar, and one of his friends returned to recover them. Brown, while outside the bar, threatened Moss, but things quieted down, and Moss and the others went back into the bar, where the pool game continued.

Later in the afternoon Brown returned to the Club, and the fight between the various persons broke out again. Brown issued Moss a challenge to fight, but Moss refused to go outside the bar. Perkins approached Moss and the defendant, and Brown struck Perkins. Brown took a swing at Moss, and Moss countered also with a swing, at which time Moss felt pain in his chest and saw Brown drawing back a knife from his chest. Moss went back to the bar and asked someone to call an ambulance. During the melee, in which others engaged, pool cues were used and broken in their use. Moss and Perkins were taken by ambulance to the hospital in Mountain Home, and later to the hospital at the air base.

Nine witnesses testified for the state. The defendant, who had difficulty in locating some witnesses, called three of his own and recalled one of the state's witnesses. There were some discrepancies in the testimony of the various witnesses as to specific details as they related to the events which occurred in the bar. The light in the bar was not bright, and the witnesses were situated in different areas in the bar, giving each a different viewpoint of the events.

Trial of the case was held in December, 1968, some five months after the events took place. Two of the state's witnesses, Sgt. Moss, the victim of the assault charged in the information, and Orville Greer, gave testimony at some variance with testimony they gave at the preliminary hearing. The defendant has assigned error to the failure of the trial court to properly instruct the jury as to the discrepancies in the testimony of these two witnesses at the time each of them was on the stand.

At trial, Greer testified that he was sitting in a corner of the bar and observed defendant "coming through the door with a knife in his hand." On cross-examination defense counsel questioned Greer to determine if that testimony was at variance with his testimony at the preliminary hearing where he had stated:

"Q. Did you ever see anyone with a knife in there, inside of the building.

A. Not inside the building."

Defense counsel's examination pointed out this variance to the jury and thereafter the witness was excused.

In the same vein, Moss was questioned at trial pertaining to his actions toward the defendant just prior to the stabbing[1] and he testified that when Brown approached him during the second melee, Moss, after seeing what had happened to Sgt. Perkins, pushed him at the breast bone. Moss was asked by defense counsel to compare this testimony to the testimony he gave at the preliminary hearing,[2] where he described how Brown approached him, and that he swung

---

1. (Moss related that Brown struck Sgt. Perkins with his hand before turning to Moss; in fact Perkins had been stabbed but Moss had not realized that at this point.)

"Q. What did you do then?
A. I stood up.
Q. You stood up?
A. Yes.
Q. And what next did you do?
A. I observed the defendant's right shoulder moving and after observing what happened to Sergeant Perkins I felt I had one coming too so I started pushing at the defendant with the heel of my hand.
Q. Where did you push him?
A. At the breast bone.

Q. You did not strike him?
A. It wasn't enough to hurt him.
Q. So that doesn't count as a blow?
A. To me it was a push.
Q. So you say you only struck him twice, you are not counting this?
A. No."

2. "Q. Just a minute, you are going a little fast for me. He appeared to swing at you?
A. He started a body and shoulder movement as if to throw a punch at me.
Q. Where were his hands?
A. They were low.
Q. His hands were low. Were they clinched?
A. I couldn't see his right hand, sir.

at Brown striking him, not with a closed fist, but with the heel of his hand.

■ Defendant contends that the trial court erred in failing to instruct the jury at the time the witnesses testified that if a witness testified falsely that they could disregard all of his testimony. From the record it appears that the defendant made no motion for an instruction to be given by the court during the examination of the witnesses. The court did, however, properly instruct the jury that they were the sole judges of the credibility of the witnesses, and it was for them to weigh the testimony, and also instructed them to the effect that if any witness wilfully testified falsely to any material fact they should disregard such false testimony and that the jurors were at liberty to disregard any other testimony of such witness unless it were corroborated to their satisfaction.

In neither instance, i. e., the testimony of Sgt. Moss or that of Sgt. Greer, does there appear any substantial conflict. There certainly is little if any conflict in Moss's testimony; as to Greer, the record indicates from testimony of other witnesses that Greer did not focus his attention too closely on the events in the bar until after Perkins and Moss had been stabbed and Brown was backing out the door. These facts were made clear to the jury. Discrepancies in testimony and the candor of the witnesses in their testimony are for resolution by the jury. The trial court is not obligated to

instruct the jury at the moment testimony is given, and defendant has called our attention to no authority requiring that such an instruction be immediately given when such discrepancies occur. The jury was properly instructed on the law applicable in these circumstances. State v. Boyles, 34 Idaho 283, 200 P. 125 (1921); People v. Holt, 25 Cal.2d 59, 153 P.2d 21 (1944).

■ Defendant assigns as error certain actions by the prosecution resulting in a witness being unavailable to testify on behalf of the defendant at trial. The missing witness was one Alfred Greeley, a trainee in the Job Corps who was with Brown during the afternoon in question. Attempts were made to locate Greeley in Louisiana, but the officials there were unable to locate or serve him with a subpoena. Another witness, who had left Idaho, Forest Morgan, was located and did testify at trial on defendant's behalf.

From the record before the court it appears Greeley left the vicinity of Mountain Home very soon after giving a statement to the police who were investigating the incident. There is nothing in the record which indicates that the state was aware that Greeley was about to depart. Counsel retained by the defendant entered the case within three or four days after the defendant was arrested. No application appears in the record for conditional examination of such a witness under the authority of I.C. §§ 19–3101,[3] 3102.[4] The record

Q. You could not see his right hand—
A. His left hand was clinched.
Q. His left hand was clinched, and he dropped his shoulder as to cause you to think that he was going to throw a blow?
A. Yes, sir.
Q. And you swung at him?
A. Yes, sir.
Q. Did you ever see a knife on this occasion, at this time?
A. Prior to—
Q. At this time?
A. No, sir.
Q. Now then you struck him. Where did you strike him?
A. In the chest, sir.
Q. And in relation to your striking him in the chest, was that with a doubled fist?

A. I don't think it was sir. I couldn't say for sure.
Q. Had you just pushed?
A. No, sir, it would have been, it wasn't with my fist, it was with the heel of my hand.
Q. It was with the heel of your hand?
A. Yes, sir."

3. I.C. § 19–3101. "Witnesses may be conditionally examined.—When a defendant has been held to answer a charge for a public offense, he may, either before or after an indictment, have witnesses examined conditionally, on his behalf, as prescribed in this chapter, and not otherwise."

4. I.C. § 19–3102. "Grounds for examination.—When a material witness for the de-

is devoid of any showing that the state was responsible in any way for the early departure of this witness. Without a showing that Greeley would have offered testimony different from that of the other witnesses or that the state in some way hindered the defendant in his efforts to obtain him as a witness, we find no error in this regard.

■ The defendant assigns as error certain comments made by the prosecutor during the course of the trial. The first challenged comment came when defense counsel was examining Sgt. Greer as to whether he had seen Brown enter the bar with a knife. Defense counsel asked Greer, "Do you wish at this time to correct the statement you made at the preliminary hearing?" The prosecutor objected, stating:

> "Objection, Your Honor, there has never been any statement made in the hearing that this is not a correct statement, this is a matter for the jury to decide after hearing the testimony today and having read the preliminary transcript."

The court sustained the objection. Defense counsel was allowed to ask Greer if he wished to "change" his testimony after he read the pertinent part of his testimony from the transcript of the preliminary hearing, and Greer's response was in the negative. We find no error in this regard.

The defendant also points to the closing argument of the prosecutor and contends that certain statements of the prosecutor were prejudicial and inflammatory and should not have been allowed to be made before the jury. This point requires no elaboration. There was no objection to two of the statements complained of; the objection to the other statement was sustained and the trial court admonished the jury to disregard the statement. We find no error in this regard.

■ In addition to the assignment of error wherein the defendant contends that

there were discrepancies in the testimony given by a particular witness at the preliminary hearing and the testimony a particular witness gave at trial, the defendant lists an assignment of error directed to alleged discrepancies appearing in the record as between the testimony of individual witnesses. Defendant again contends the trial court erred in not immediately instructing the jury that a witness's testimony could be disregarded as soon as a conflict arose between the testimony of one of the state's witnesses with that of another of the state's witnesses. As previously pointed out, some conflicts in testimony in a case of this nature can be considered usual and expected. If there were no disagreement, there probably would be no trial. It is the function of counsel at trial to point out the discrepancies and conflicts. Thereafter, it is for the jury to determine the credibility of the witnesses and resolve any conflicts in the testimony. After such determination this court is bound by such findings. State v. Davis, 69 Idaho 270, 206 P.2d 271 (1949); State v. Hall, 88 Idaho 117, 397 P.2d 261 (1964).

■ The final assignment of error concerns the giving of a so-called "dynamite instruction" to the jury after they had been deliberating for some nine hours without arriving at a verdict. Here the jury was recalled to the courtroom, and an instruction was given to them, following which the jury retired, and shortly thereafter returned its verdict of guilty. The instruction given by the court was the same one as considered by this court in State v. Bailey, 94 Idaho 285, 486 P.2d 998 (1971). In that opinion trial courts were cautioned on the use of this instruction, but the court held that there was no error in the giving of the instruction under the circumstances disclosed in that record. From the record in this case, we find no error in the giving of this instruction under the circumstances, although we reiterate that the preferred

---

fendant is about to leave the state, or is so sick or infirm as to afford reasonable grounds for apprehending that he will be unable to attend the trial, the defendant may apply for an order that the witness be examined conditionally."

practice is to give such an instruction at the time other instructions are given.

The judgment of the trial court is affirmed.

McQUADE, C. J., DONALDSON and SHEPARD, JJ., and SCOGGIN, D. J., concur.