[Crim. No. 15604. First Dist., Div. Three. Mar. 14, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES NORMAN LITTERAL, Defendant and Appellant.

## COUNSEL

Paul N. Halvonik, State Public Defender, under appointment by the Court of Appeal, Clifton R. Jeffers, Chief Assistant State Public Defender, Ezra Hendon and Tanya Neiman, Deputy State Public Defenders, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Derald E. Granberg and Laurence M. May, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TERRY, J.**\*—Defendant, James N. Litteral, appeals his conviction for second degree burglary.

San Rafael Police Officer Fahy, while on patrol, saw and recognized codefendant Hickey and Gordon West on Second Street in the late evening hours of January 25, 1976. Officer Fahy parked his patrol car near an open convenience store, anticipating the arrival of Hickey and

---

\*Assigned by the Chairperson of the Judicial Council.

West in that area. When they did not arrive, he returned to Second Street, stopped and talked to West. The officer's attention was directed to a nearby auto painting shop, where he saw two persons inside. They stooped down and then started running. Officer Fahy radioed for assistance and with his partner, Officer Dougherty, went to the rear of the building. As Fahy was looking for the suspects, Officer Dougherty called his attention to a suspect coming out of a window. At trial, Dougherty described the individual exiting the window as being 5 feet 8 inches to 6 feet tall, 150-160 pounds, wearing a three-quarter length dark green jacket, Levi-type pants and black shoes. The suspect also had collar length hair. A few minutes later, the defendant was arrested by a third officer when he was found crouched behind a nearby fence. He was wearing a pair of Levis, denim shirt, an olive green drab jacket, and black shoes.

Officer Fahy returned to the auto body shop and called for the other suspect to come out. Hickey came out and was arrested for burglary. At the trial, the defendant testified that he had been visiting his girl friend who lived nearby and had left her residence after an argument. He intended to meet his friends Hickey and West at the convenience store and was coincidentally at the place where he was arrested when he was seeking a private place to relieve himself.

The defendant was charged with codefendant, Frank M. Hickey, in an information filed February 24, 1976, with violation of Penal Code section 459. Jury trial commenced April 19, 1976.

The jury was instructed and commenced its deliberation at 4:49 p.m. on April 27, 1976. It adjourned for the evening recess at 6 o'clock on the same day and resumed its deliberations at 9:30 the next morning. At 10:25 a.m., April 28, the court received a note from the foreman indicating a consensus of opinion that no unanimous verdict could be reached. The court further instructed the jury and ascertained that further deliberations might be productive in reaching a verdict. Thereafter, the following exchange occurred:

"THE FOREMAN: While we are here, could we have some testimony read back? THE COURT: I was afraid of that. The reporter who took all of the testimony in the case is ill today, and there's just no way we can do it. THE COURT: You will just have to rely on your memories. If there is any further discussions or anything else that you want I can give you that, but there is just no way I can get the testimony for you. Well, I am going to ask you to resume your deliberations. Bear in mind that what I have said

about the importance of considering the other fellow's point of view, and if, after you have done that you honestly can not reach a verdict, let me know. But at least give it a try. THE FOREMAN: Okay."

The jury then retired for further deliberation at 10:55 a.m. and at 2:35 p.m., the same day, returned verdicts finding both defendants guilty of second degree burglary.

■ Among the contentions advanced by defendant, which we will sustain, is that the trial court committed prejudicial error by refusing the jury's request, midway in its deliberations, for the rereading of testimony.

Relying upon Penal Code section 1138 and *People* v. *Butler* (1975) 47 Cal.App.3d 273 [120 Cal.Rptr. 647] (hg. den.) appellant contends that reversible error occurred when the court refused to take the steps necessary to obtain a rereading of the testimony requested by the jury.

Penal Code section 1138 provides: "After the jury have retired for deliberation, if there be any disagreement between them as to the testimony, or if they desire to be informed on any point of law arising in the case, they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney, and the defendant or his counsel, or after they have been called."

In *Butler,* the trial court refused a request to reread the testimony of five witnesses on the ground that it would have been the equivalent of a retrial, since those were the primary witnesses in the case. The *Butler* court concluded that the error was reversible and noted that ". . . No attempt was made by the court to attempt a narrowing down to portions of the particular witnesses' testimony in order to satisfy the jury's request (see *People* v. *Gordon* (1963) 222 Cal.App.2d 687 [35 Cal.Rptr. 335]) or to 'pinpoint' what the jurors wanted (see *People* v. *Sprinkle* (1962) 201 Cal.App.2d 277 [19 Cal.Rptr. 804]). Had such attempts been made, successfully, it is at least conceivable that the court and counsel, acting together, might have been able to reach stipulations as to the testimony or to prepare a summary for the jury, as was done in *People* v. *Dreyer* (1945) 71 Cal.App.2d 181 [162 P.2d 468], where compliance with a jury request would have required four hours to read the requested testimony. Absent strong supervision by the trial court, and in the face of an outright rejection of the jury's request, the appellate court is put in that

position that we cannot say, or even speculate, what effect the rereading of the requested testimony would have had or what effect was created by the failure to reread that testimony." (*Butler, supra,* at p. 281.)

In the present case too, the trial court rejected the request without explaining possible alternatives. The court merely stated "there is just no way I can get the testimony for you."

Several cases have dealt with the problem that arises when the court suggests that the requested testimony could be read at some later time but the jury continues to deliberate and reaches a verdict before the rereading had taken place. (*People* v. *Gonzales* (1968) 68 Cal.2d 467 [67 Cal.Rptr. 551, 439 P.2d 655]; *People* v. *Warren* (1900) 130 Cal. 678 [63 P. 87]; *People* v. *Slaughter* (1917) 33 Cal.App. 365 [165 P. 44].) In none of these cases did the court actually deny a request by the jury for the rereading of testimony.

In *People* v. *Stafford* (1973) 29 Cal.App.3d 940 [106 Cal.Rptr. 72], the jury made a late hour request to read a substantial portion of the testimony. The trial court stated that because of the lateness of the hour and the fact that no overnight lodgings were available for them a mistrial would have to be called unless the jury decided to continue deliberating without a rereading of the testimony. The jury decided to retire and shortly returned with a verdict. The *Stafford* court upheld the judgment on the ground that the defendant had been deprived of no substantial right by the court's expression of the true facts of the situation, including the fact that he would have to exercise his right to declare a mistrial. The court also noted that the record did not show the statutorily required "disagreement" among the jurors as to the testimony to be read. In *Stafford,* the jury was given the choice of being discharged or deliberating further, whereas the court in the present case directed the jurors to continue to deliberate. We do not suggest that it was at all improper to admonish a jury that had deliberated for only two hours after four days of trial to renew their efforts in deliberating towards a verdict. However, in the present case, the admonitions to the jury were coupled with an outright refusal to reread the requested testimony together with an inquiry as to the jurors' numerical division.

"On these facts, it is proper to characterize the trial court's action as one of jury coercion as opposed to a helpful attempt to accede to the

jury's request in a manner reasonable under the exigencies of the situation. . . ." (*People* v. *Butler,* 47 Cal.App.3d 273, 283 [120 Cal.Rptr. 647].)

■ The People contend that the defendant waived any error in the judge's refusal to reread. It is true that defendant's counsel failed to object, to request a continuance, or to inquire into what testimony was sought. There is authority for the proposition that defendant's failure to object to a trial court violation of section 1138 will constitute a waiver. (See *People* v. *Kageler* (1973) 32 Cal.App.3d 738, 745-746 [108 Cal.Rptr. 235]; *People* v. *House* (1970) 12 Cal.App.3d 756, 765-766 [90 Cal.Rptr. 831].)

In *Kageler,* the question the court refused to answer was "can a defense attorney recall one of his witnesses after the district attorney has presented his rebuttal witnesses?" Thus, the jury was seeking further legal instruction. The defendant's tacit approval of the court's answer that it had given all the instructions necessary was the equivalent of waiving the giving of an instruction. In light of the probability that the court's answer of a "qualified 'yes' " would have been unfavorable to the defendant, counsel may have made a tactical decision not to request such an instruction. The *Kageler* court characterized the section 1138 violation as only "technical."

In *House,* the court had answered two jury questions without calling the jury and attorneys into the courtroom. The attorneys were advised of what had occurred after it happened, but made no assignment of error or motion for a mistrial. The *House* court also characterized the error as "technical" and found that the defendant's tacit approval deprived him of the right to object on appeal.

In the present case, the error was not technical. The jury was deprived of the chance to rehear testimony it felt a need to rehear. The *Butler* court concluded that the defendant's failure to object to a refusal to reread testimony did not operate as a waiver in light of the fact that the right was that of the jury and not of the party. (47 Cal.App.3d at pp. 283-284.) As in *Butler,* the jury was deprived of the "fundamental right to be apprised of the evidence upon which they [were] sworn conscientiously to act." (47 Cal.App.3d at pp. 283-284.) And in light of

the fact that there was no mention of what testimony the jury desired reread, defendant had no more reason to support the jury's desire than did the district attorney. It would be unreasonable to place upon the defendant the burden of becoming an advocate for the jury's right to rehear evidence which could conceivably unlock a previously deadlocked jury. We therefore conclude that such a proceeding is not one " 'conducted substantially according to law.' " (*People* v. *Weatherford* (1945) 27 Cal.2d 401, 420 [164 P.2d 753]; see also *Asplund* v. *Driskell* (1964) 225 Cal.App.2d 705, 714 [37 Cal.Rptr. 652]; Witkin, Cal. Criminal Procedure, § 519, pp. 529-530.)

█ " 'Violations of section 1138 Penal Code do not warrant a reversal of a judgment of conviction unless prejudice is shown. [Citations.]' " (*People* v. *Kageler, supra,* 32 Cal.App.3d at p. 746, quoting *People* v. *House, supra,* 12 Cal.App.3d at p. 766.) In *Butler* the error was reversible because virtually the whole trial was requested reread and the jury's stated reason was that some of it had been inaudible. In the present case, the question of prejudice is difficult to decide because there was no inquiry into what parts of the testimony the jury desired reread. The People contend that precisely because there was no indication of what testimony would be reread defendant cannot show any prejudice. However, since it is the duty of the court, and not of the defendant, to protect the jury's rights under section 1138, as the *Butler* court and we have concluded (47 Cal.App.3d at pp. 283-284), defendant cannot be penalized for the court's failure to even make inquiry into what testimony the jury sought. "We cannot say, or even speculate, what effect the rereading of the requested testimony would have had or what effect was created by the failure to reread that testimony." (*Butler, supra,* at p. 281.) It cannot be said that it is reasonably probable the same result would have been reached had the testimony been reread, in light of the fact that even on first reading at least two jurors had reasonable doubts about the guilt of one or both of the defendants. (See *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].)

Our conclusion that the judgment must be reversed because of prejudicial error in the trial court's denial of the jury request makes it unnecessary for us to address defendant's remaining contentions, which attack (1) inclusion of the defendant's prior convictions in the abstract of judgment, and (2) the further instructions to the jury when it announced it was deadlocked. Although each of those contentions has received our

attention, no purpose would be served by a detailed analysis or extended discussion of them, in view of our disposition of the appeal.

The judgment is reversed.

Scott, Acting P. J., and Feinberg, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 1, 1978.