650 P.2d 625

STATE of Idaho, Plaintiff-Respondent,

v.

James Lee SILCOX,
Defendant-Appellant.

No. 13376.

Supreme Court of Idaho.

Aug. 23, 1982.

Louis L. Uranga, Boise, for defendant-appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Sol. Gen., Michael B. Kennedy, Deputy Atty. Gen., Boise, Thomas R. Cushman, Deputy Atty. Gen., Horseshoe Bend, for plaintiff-respondent.

McFADDEN, Justice.

On June 24, 1978, defendant James Lee Silcox attempted to place certain individuals under citizen's arrest. One of the individuals Silcox attempted to place under arrest, Leroy Burger, refused to acknowledge the arrest and fled the scene of the arrest. In the course of firing shots in the direction of Burger, Silcox shot Burger in the back. Silcox was subsequently charged with the offense of assault with a deadly weapon. I.C. § 18–906.

The matter was set for trial on February 8, 1979. The defendant filed a motion for an order staying the proceedings and an order dismissing the information on the grounds that there had been a substantial failure to comply with the Uniform Jury Selection and Service Act (I.C. § 2–201 et seq.) in selecting the jury for the scheduled trial. On February 7, 1979, the motion was brought on for hearing before the district court. The court found that the evidence presented established that the jury panel had not been selected in accordance with the Uniform Jury Selection and Service Act. Nonetheless, the court ruled that the defects could be cured without substantial prejudice to the defendant if the matter were stayed until April 2, 1979.

The matter was set for trial on that date. Three days prior to trial, the defendant's counsel filed another motion to stay the proceedings and to dismiss the information, alleging again a substantial failure to com-

ply with the Uniform Jury Selection and Service Act. One of the bases of the allegation was the fact that one of the members of the Jury Commission, Dan O. Turnipseed, was absent during the compilation of the master list, master jury wheel and qualified jury wheel. On April 2, 1979, at the outset of the trial, the district court denied the defendant's motion. The trial lasted for two days.

On April 3, at 8:40 p.m., the jury began its deliberations. After several hours of deliberation, the jury returned to the courtroom in the early morning hours (3:46 a.m.) of April 4, 1979, announcing that the members of the jury were unable to agree on a verdict. At that time, the district court judge, after consultation with defense counsel and the prosecution, provided further instruction to the jury.

"Well, I realize, ladies and gentlemen, that the hour is very late and that you have been deliberating about 7 hours; however, because of the tremendous expense of retrying the case and the fact that I just don't see how another jury would have any different evidence, any different law, any different arguments, or how the case could be presented any differently to them, and because of the time and effort that's been invested so far, I feel I must ask you to return and keep trying, and hopefully you will be able to reach a verdict. If you cannot, why, then, you can notify the bailiff and we will discharge you.

So, with that, I would ask you to return to the jury room and try, try some more."

No objection was made to the instruction. After approximately two and one-half hours of further deliberation, at 6:24 a.m., the jury returned a verdict finding the defendant guilty of the lesser included offense of injuring another by discharge of aimed firearm. I.C. § 18–3306. From the entry of judgment of conviction, the defendant perfected the instant appeal.

Three issues are presented on appeal: (1) did the lack of participation by both members of the jury commission in the preparation and compilation of the master list, master jury wheel and qualified jury wheel constitute a failure to substantially comply with the Uniform Jury Selection and Service Act; (2) did the oral instruction given to the jury after it announced it was deadlocked have a coercive effect on their subsequent deliberations; and (3) did the district court utilize improper procedures in giving the oral instruction.

*Jury Selection Process*

■ At the time of the compilation of the master list, master jury wheel and qualified jury wheel, from which the jury was selected in the instant case, the Boise County Jury Commission consisted of the Boise County Clerk, Robert J. Tuffield, and the Boise County Jury Commissioner, Dan O. Turnipseed. It was the statutory obligation of the Jury Commission, acting as a body, to compile and maintain a master list, a master jury wheel and a qualified jury wheel. I.C. §§ 2–206, 207, 208 and 210. The record, however, establishes that one of the members of the Boise County Jury Commission, Mr. Turnipseed, did not physically participate in this process. The appellant submits that this lack of personal participation in the jury selection process by one of the members of the jury commission constitutes a failure to substantially comply with the Uniform Jury Selection and Service Act.

The policy of the Act is stated in I.C. § 2–202 as follows:

"It is the policy of this state that all persons selected for jury service be selected at random from a fair cross section of the population of the area served by the court, and that all qualified citizens have the opportunity, in accordance with this act to be considered for jury service in this state and an obligation to serve as jurors when summoned for that purpose."

The appellant has made no argument, nor does the record indicate, that the lack of participation by one member of the jury commission in the preparation and compilation of the jury lists affected the random nature or objectivity of the selection process.

In this regard the instant case is nearly identical to the case of *State v. Walters*, 61 Idaho 341, 102 P.2d 284 (1940). The defendant in *Walters* challenged the jury selection process upon the basis that the county commissioners had not acted as a board in compiling a jury list as required under the existing statute. The court initially observed that the preparation of jury lists should be by the board, acting as a body, rather than by the individual members of the board acting independently. 61 Idaho at 348, 102 P.2d at 287. The court, however, affirmed the district court's denial of the defendant's motion to quash the jury panel, on the ground that the defendant had not sufficiently established any prejudice arising from non-compliance with the existing statute governing jury selection. *Id.* Specifically, it was stated:

> "On a motion to quash a jury panel the burden of showing substantial actual or presumptive prejudice to the rights of defendant rests on the moving party and must be established by a preponderance of the proofs. (*Morris v. State*, 62 Okl.Cr. 337, 71 P.2d 514, 517; *Norris v. Alabama*, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074.) We feel that appellant has failed to sustain the burden of proof cast upon him, and that his motion to quash was properly denied." 61 Idaho at 347, 102 P.2d at 286.

As in the *Walters* case, we are of the view that even though it might have been preferable that there had been the actual participation of both members of the jury commission, the compilation of the jury lists by the one member unaided by the other member, was nonetheless valid since the defendant did not establish nor even argue that any prejudice resulted therefrom.

*Coercive Effect of Oral Instruction*

■ Turning next to the issue of the propriety of the oral instruction given to the jury after it announced it was deadlocked, while this instruction should not be considered as a model as to either form or procedure we are of the opinion that the instruction did not have a coercive effect on the jury's subsequent deliberations and does not require reversal.

Examining the circumstances surrounding the district court's decision to give the instruction and the wording of the instruction itself, the following factors attest that the instruction was proper and not coercive in effect: (1) before the instruction was given the jury had been deliberating for approximately seven hours; (2) the court, by way of its instruction, asked the jury to "keep trying, and hopefully you will be able to reach a verdict;" and (3) the court concluded the instruction with the statement to the jury that if they could not reach a verdict "we will discharge you." The instruction in no wise can be characterized as an admonition to the jurors in the minority that they should reconsider the reasonableness of their convictions when not concurred in by the majority.

As to this later point, it is to be noted that Idaho has adopted a variation of the "*Allen*" or "dynamite" instruction. *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896); *State v. Bailey*, 94 Idaho 285, 486 P.2d 998 (1971); Idaho Trial Judge's Manual, § 7.63; Idaho Jury Instructions, no. 131. The instant instruction being somewhat akin to an "Allen" or "dynamite" instruction, it is to be noted further that several courts have held that it is permissible for a trial judge to impress upon jurors, after they have been allowed to deliberate for a reasonable time, the importance of reaching a verdict, to point to the expense and time it has taken to try the case, and to note that the case may have to be decided by some jury and in all probability on the same pleadings and evidence. *See, e.g., Hodges v. United States*, 408 F.2d 543 (8th Cir. 1969); *Plumley v. State*, 4 Md.App. 671, 245 A.2d 111 (1968).

*Procedure Used in Giving Instruction*

I.C.R. provides in pertinent part:

> "The court shall inform counsel of its proposed actions upon the requested instructions and shall allow counsel a reasonable time within which to examine and make objections outside the presence of the jury to such instructions or the failure to give requested instructions.

The court shall read the instructions to the jury prior to final argument; but if all parties consent, it may read part or all of the instructions after final argument." In addressing the issue of non-compliance with this rule by a trial court, this court has placed responsibility upon counsel to object "while there is still the opportunity to cure the defect." *State v. Watson,* 99 Idaho 694, 701, 587 P.2d 835, 842 (1978). The appellant submits there was no opportunity in the instant case to cure the alleged defect in the instruction, i.e., the instruction was not reduced to written form and the district court did not provide counsel an opportunity to object to the instruction on the record.

Although neither the clerk's record nor the transcript disclose what transpired prior to the giving of the challenged instruction, the affidavit of the Boise County Prosecuting Attorney augmented to the record in this case indicates that the appellant has not preserved any alleged error on this issue. The affidavit states that counsel for appellant was not only informed of the district court's intention to give some form of instruction to the jury, but was also informed by the court what the substance of the instruction would be and reminded by the court of his right to object. Accordingly, the alleged error, if any there was, is deemed to be waived. *State v. Watson, supra.*

Judgment of conviction affirmed.

BAKES, C.J., and DONALDSON and SHEPARD, JJ., concur.

BISTLINE, Justice, dissenting.

Were it the year 1582, and I were sitting as a member of an appellate court in England, I might possibly be able to bring myself to join the Court's opinion. On the positive side it is not suggested that the jurors in this case were denied food or water and told that they would be locked up indefinitely until they reached a verdict, as was the practice in the early criminal law in merry old England. But, it is not the year 1582, rather the year 1982. Hence, I am unable to agree with the majority's conclusion that there was no coercive effect

in giving this particular oral "instruction" to the jury in the middle of the night and after seven hours of deliberation immediately upon the heels of a second full day of hearing testimony, absorbing jury instructions and listening to summations of counsel. In short, the complete ease with which four members of the Court accept this most unusual procedure causes me deep concern—far over and above the language of the "instruction." Circumstances vary, and I fear that in the long run the Court's stamp of approval on the procedure which took place in this case is far more injurious to the practice than the particular harm, if any, done to Mr. Silcox. It should be kept in mind that the state may also have been the loser. The jury, or a majority thereof, had they been given the case on the following morning, and had they not been dynamited, might very well have convicted Silcox on the higher charge rather than the lesser included offense.

I.

The majority correctly notes that this Court has adopted a variation of the "Allen" or "dynamite" jury instruction. *State v. Brown,* 94 Idaho 352, 487 P.2d 946 (1971); *State v. Bailey,* 94 Idaho 285, 486 P.2d 998 (1971). The *Allen*-type instruction, employed as a means to "blast" a deadlocked jury into a verdict, has, however, come under increasing judicial scrutiny. Partial or total rejection of the charge has been the sentiments of several courts. *See, e.g., United States v. Thomas,* 449 F.2d 1177 (D.C.Cir.1971); *United States v. Fioravanti,* 412 F.2d 407 (3d Cir. 1969), *cert. denied sub nom.,* 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969); *United States v. Brown,* 411 F.2d 930 (7th Cir. 1969), *cert. denied,* 396 U.S. 1017, 90 S.Ct. 578, 24 L.Ed.2d 508 (1970); *Fields v. State,* 487 P.2d 831 (Alaska 1971); *People v. Barraza,* 23 Cal.3d 675, 153 Cal. Rptr. 459, 591 P.2d 947 (1979); *State v. Nicholson,* 315 So.2d 639 (La. 1975); *State v. White,* 285 A.2d 832 (Me. 1972); *State v. Martin,* 297 Minn. 359, 211 N.W.2d 765 (1973); *State v. Marsh,* 260 Or. 416, 490 P.2d 491 (1971), *cert. denied sub nom.,* 406

U.S. 974, 92 S.Ct. 2420, 32 L.Ed.2d 674 (1972). The California Supreme Court recently analyzed the positive and negative aspects of the *Allen*-type charge and found two elements of the charge particularly suspect:

"The first and most questionable feature is the discriminatory admonition directed to minority jurors to rethink their position in light of the majority's views. In the *Allen* opinion this concept is expressed in the following passage:

'[I]f much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, upon the other hand, the majority was for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority.'

... A second controversial element in *Allen*-type instructions, not approved in *Allen* itself, is the direction ... that '*You should consider that the case must at some time be decided.*'" *People v. Gainer,* 19 Cal.3d 835, 139 Cal.Rptr. 861, 866, 566 P.2d 997, 1002 (Cal. 1977) (emphasis added).

The case at bar presents this Court with a classic example of the second element. In pertinent part, the trial judge advised the jury:

"Well, I realize, ladies and gentlemen, that the hour is very late and that you have been deliberating about seven hours; however, because of the tremendous expense of retrying the case and the fact that I just don't see how another jury would have any different evidence, any different law, any different arguments, or how the case could be presented any differently to them, and because of the time and effort that's been invested so far, I feel I must ask you to return and keep trying, and hopefully you will be able to reach a verdict."

The inference is clear—the case must be decided sometime, so in order to save time, effort and county finances, let's get it over with now. The majority indulges in the fantasy that, *inter alia,* the judge's further advice that the jury would be discharged in the event that a verdict could not be reached after further deliberation, in some way eliminated the coerciveness of his preceding charge. This comment, although it perhaps might minimize the compulsion of his earlier remarks, certainly would not eliminate their coercive effect. In this day and age of fiscal restraints and budget deficits, informing a juror that a substantial amount of taxpayers' time and money will be wasted unless a verdict is arrived at can only be expected to encourage the recipients toward abandonment of their individual resolve. Such extraneous and improper considerations of costs and administrative inconvenience cannot be allowed to influence a jury as a whole or an individual juror's conscience as the guilt or innocence of a defendant is under deliberation.

Furthermore, as appellant notes in his brief, the implication that the case will have to be retried if the jury remains deadlocked is inaccurate. As the court in *Gainer, supra,* noted:

"It is simply not true that a criminal case 'must at some time be decided.' The possibility of a hung jury is an inevitable by-product of our unanimous verdict requirement. Confronted with a mistrial, the [state] retain[s] the authority to request dismissal of the action .... Moreover, this option is frequently exercised, as the criminal bar knows, when the prosecution concludes that its inability to obtain a conviction stemmed from deficiencies in its case. Thus the inconclusive judgment of a hung jury may well stand as the final word on the issue of a defendant's guilt .... [A]n instruction which implies that a hung jury will assuredly result in a retrial misstates the law ...." 139 Cal.Rptr. at 870, 566 P.2d at 1006 (footnote omitted) (citations omitted).

Several other courts have recognized a mistrial from a hung jury as an acceptable

resolution of a criminal case. *United States v. Flannery,* 451 F.2d 880 (1st Cir. 1971); *United States v. Thomas,* 449 F.2d 1177 (D.C.Cir.1971); *Fields v. State,* 487 P.2d 831 (Alaska 1971). A well-reasoned dissent by Circuit Judge Brown in *Huffman v. United States,* 297 F.2d 754 (5th Cir. 1962), defined the acceptable parameters of an *Allen*-type supplemental jury instruction and recognized the legitimate consequences of its failure:

"I think a mistrial from a hung jury is a safeguard to liberty. In many areas it is the sole means by which one or a few may stand out against an overwhelming contemporary public sentiment. Nothing should interfere with its exercise. In the final analysis the Allen charge itself does not make sense. All it may rightfully say is that there is a duty to consider the views of others but that a conscientious person has finally the right and duty to stand by conscience. If it says that and nothing more it is a superfluous lecture in citizenship. If it says more to declare that there is a duty to *decide,* it is legally incorrect as an interference with that rightful independence.

"The time has come, I think, to forbid this practice. Like the silver platter, this is too dear to keep. The cost in fundamental fairness is too great." 297 F.2d at 759 (Brown, J. dissenting).

In the case at bar, the logical inference from the judge's remarks, *i.e.,* that the case would have to be retried if a verdict was not reached, was not a foregone conclusion. The instruction, therefore, necessarily had a high potential for coercive effect upon the minority juror(s), even though not intended as such. Given the acknowledged capabilities of the trial judge, other than for the bizarre hour, I have no doubt but that he would have merely asked the jurors if they thought they could reach a verdict in a reasonably short time, and, depending on the answer, either discharged them on the spot, or asked them to return to their deliberations.

The identical instructions [1] approved of in our *Brown* and *Bailey* decisions are distinguishable from the one presented to the Court today. Indeed, that particular charge contains neither of the controversial elements examined by the *Gainer* court, and has been endorsed in substance by the Idaho State Bar [2] and the American Bar Asso-

1. "INSTRUCTION NO. 26

"The Court wishes to suggest a few thoughts which you may desire to consider in your deliberations along with all the instructions previously given.

"In your further effort to reach a verdict in this case, I would suggest that in your deliberations you examine the issues submitted with a proper regard and consideration for the opinions of each other. Each of you should freely and fairly discuss with your fellow jurors the evidence and deductions to be drawn therefrom, and you should listen to each other's arguments with an open mind. If, after doing so, any of you should be satisfied that a conclusion first reached by you was wrong, you unhesitatingly should abandon that original opinion and render your verdict according to your final decision. You should not hesitate to recede from a previously announced opinion or conclusion because of a sense of pride. Remember that you are not partisans or advocates, but rather judges. However, you should not change the conclusion you have reached merely because one or more or all of your fellow jurors may have come to a different conclusion or merely to bring about a unanimous verdict.

"Have in mind in your further deliberations that you will make a definite contribution to efficient judicial administration if you arrive at a just and proper verdict in this case. To this end you should make every reasonable effort to reach a verdict.

"You may now retire and continue your deliberations, in such manner as shall be determined by your good and conscientious judgment as reasonable men and women." *State v. Bailey,* 94 Idaho 285, 291 n. 4, 486 P.2d 998, 1004 n. 4 (1971). *See State v. Brown,* 94 Idaho 352, 356, 487 P.2d 946, 950 (1971).

2. "Requesting the Jury to Deliberate Further.

"Members of the Jury: In order to return a verdict, it is necessary that at least three-fourths of the jury agree. Your verdict must represent the considered judgment of each juror agreeing to it.

"It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-ex-

ciation.[3] Unlike the instruction in the case at bar, these charges advise the jury of the proper parameters of deliberation in order to assist them in making a decision. Emphasis is placed upon the free exchange of ideas and opinions as the foundation for a verdict, not on the economic ramifications of a hung jury.

This Court has previously not approved a jury instruction containing a statement to the effect that "the case must at some time be decided." *See State v. Brown, supra; State v. Bailey, supra; State v. Tope,* 86 Idaho 462, 387 P.2d 888 (1963); *State v. Nolan,* 31 Idaho 71, 169 P. 295 (1917); *State v. Moon,* 20 Idaho 202, 117 P. 757 (1911). Today's tacit acceptance of the instruction will subject the trial courts of Idaho to a plethora of dispute surrounding the controversial elements outlined in *Gainer*—a situation which had previously been avoided by the adoption of the less controversial *Allen* variation exemplified in *Bailey* and *Brown.*

## II.

In 1959 the Arizona Supreme Court recognized that not only is the substance of the instruction important, but also the facts and circumstances under which it is given.

"When and wherever [an *Allen* instruction's] use is called into question it must stand or fall upon the facts and circumstances of each particular case .... No rule of thumb can circumscribe definite bounds of when and where, or under what circumstances it should be given or refused.

" . . . .

" ... We are convinced that the evils far outweigh the benefits, and decree that its use shall no longer be tolerated and approved by this Court." *State v. Thomas,* 86 Ariz. 161, 166, 342 P.2d 197, 200 (1959). *See United States v. Fioravanti,* 412 F.2d 407 (3d Cir. 1969).

The circumstances in which this charge was given are particularly disturbing. At 3:46 a.m., after seven hours of deliberation and two full days of jury selection and trial, almost any jurors' capacity to resist abandonment of his or her belief in favor of the majority's position would obviously be strained. Reinforced with a judge's admonition implying that a decision has to be made sometime and a retrial would involve "tremendous expense" yet provide no new evidence, arguments, or law, it is not just probable, but almost inevitable, that a juror in the minority would yield and surrender his or her own convictions to a demanding majority of the jurors armed with the particular language with which the trial judge exhorted them onward.

Courts have designed exhaustive procedures in order to protect criminal defendants from coerced confessions. *See, e.g., Spano v. New York,* 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959); *Brown v. Mississippi,* 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed.

amine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

"You are not partisans. You are judges—judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case." Idaho Jury Instruction No. 131.

**3.** "Standard 15–4.4. *Length of deliberations;* deadlocked jury

"(a) Before the jury retires for deliberation, the court may give an instruction which informs the jury:

"(i) that in order to return a verdict, each juror must agree thereto:

"(ii) that jurors have a duty to consult with one another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgment;

"(iii) that each juror must decide the case for himself or herself but only after an impartial consideration of the evidence with the other jurors;

"(iv) that in the course of deliberations, a juror should not hesitate to reexamine his or her own views and change an opinion if the juror is convinced it is erroneous; and

"(v) that no juror should surrender his or her honest conviction as to the weight or effect of the evidence solely because of the opinion of the other jurors, or for the mere purpose of returning a verdict ...." American Bar Association Standards for Criminal Justice (2d ed. 1980).

The commentary to Standard 15–4.4 offers as illustration an instruction identical to Idaho Jury Instruction No. 131 (*see* footnote 2).

682 (1936). It is equally important to protect jurors from any form or degree of coercion which might interfere with their free deliberations. To impinge upon the independent determination of guilt or innocence by any juror is to chance jeopardizing the defendant's right to a fair trial, which all courts recognize as a fundamental right, and as the Arizona court well stated it, cannot be tolerated. The same proposition was recently restated by a California appellate court in *People v. Butler,* 47 Cal.App.3d 273, 120 Cal.Rptr. 647, 654 (1975):

"The right of the accused in a given case to a fair trial, conducted substantially according to law, is at the same time the right of all inhabitants of the country to protection against procedure which might at some time illegally deprive them of life or liberty." (Hearing denied by California Supreme Court.)

*Butler* and *People v. Litteral,* 79 Cal.App.3d 790, 145 Cal.Rptr. 186 (1978) (hearing denied by California Supreme Court), were cited in the special concurring opinion in *State v. Hernandez,* 102 Idaho 349, 630 P.2d 141 (1981), in which an effort was made to bring this Court to the realization that jurors have been statutorily accorded certain rights, and that a denial of those jurors' rights works a denial of an accused's fundamental right to a fair trial. In *Hernandez* the involved juror's right was to not be denied a rereading of all—rather than certain—testimony which he wanted. In this case the involved juror's right was the right to pass upon an accused's guilt or innocence, absent any improper coercion from the trial court and not being caused to so deliberate at a time when the minds of most people are at rest. Just as I.C. § 19–2204 in terms absolutely mandatory entitles a jury to further information on a point of law or clarification of testimony, so does I.C. § 19–2202 mandate that the sheriff must, while the jury are kept together during the trial, or during their deliberations, provide them "with suitable and sufficient food and lodging." Clearly the statute contemplates that jurors entrusted with the awesome responsibility of deciding whether an accused shall go to prison are entitled to work at their task a normal day, and are entitled to have, and know that they have, a lodging for the night so that they may on the ensuing day resume their deliberations with some degree of vim, vigor, and vitality. Clearly this juror's right was in this case wholly disregarded. Nothing in the record intimates in the slightest that the jury was informed of their right to hang it up for the night and stay at suitable lodging which the sheriff would furnish for them, and at county expense. Under these unique, and one would hope unprecedented, circumstances the jury was put to deliberating when it better would have been put to bed so as to be fresh for final summations and the reading of the Court's instructions on the law. Under these circumstances, and at some time after 3:00 a.m., the jury was given an instruction, or, if you will, admonition, which should not be given in the middle of the morning or afternoon.

The Court's opinion, however, sees all of this of little moment. First of all, the Court magnifies the monstrosity of the proposition by closing in on the "instruction" which isn't really an instruction on the law at all, but an admonition or an exhortation—either of which descriptions is more fitting than the designation of "instruction." It is simply the trial court's advice to the jury as to what the court thinks should be done and why. From there the Court's opinion makes much of the lack of an objection on the part of counsel for Silcox, and cites our recent case of *State v. Watson,* 99 Idaho 694, 587 P.2d 835 (1978), for the proposition that defendant somehow waived the trial court's failure to not pass out to counsel a written version of his intended remarks the giving of which the court obviously intended to produce a verdict. *Watson,* however, with which I had some concern, simply stands for the proposition that counsel were not in any position to object on appeal to an instruction of law to which no objection was made in the trial court. A rule of procedure—court made—was involved, and it is for certain that this Court can and will be as technical with its own rules as is thought

appropriate to a given case. The Allen "instruction" is better accepted for the Allen "charge" which it really is. A colloquial expression used amongst the trial lawyers, akin to the "dynamite" charge, is even more descriptive.

Not at all satisfied by the Court's opinion in this case, I note also with some dismay resort to "augmentation of the record" by a prosecutor's affidavit of which it is said "indicates that appellant has not preserved any error on this issue." Therein the point is pressed that defense counsel knew in advance of "the substance" of the court's advice to the jury, and, even reminded of his right to object, did not—further evidencing a waiver believed to be fatal to defendant's right to argue the issue on appeal. Ordinarily augmentation of an appeal record by a post-appeal self-serving affidavit would not be attempted, and if attempted would be rejected out of hand. But, letting that be for the moment, when the jury is both not advised of its right to a normal night's rest, and given an Allen charge in the wee hours of the morning, there is no obligation on the part of the defense counsel to object, and any practicing attorney worth his salt would be out of his mind to object. As mentioned at the very outset, it may very well be that it was the defendant who in this case profited from this abnormal procedure. If so, his attorney would have rendered an unethical disservice to challenge the very procedure which may have let the defendant escape with a lesser conviction than most of the jurors had in mind. Defense counsel at trial are required to protect the right of their clients. The trial court, however, is required to see that the jurors are allowed to function as mandated by statutory law. In recent opinions which I cited in *Hernandez,* two California appellate courts have thoroughly addressed the issue, and so held.

In *People v. Litteral,* 145 Cal.Rptr. 186, the court of appeals was careful to distinguish between mere "technical" error, which may be waived, and non-technical error which results when a jury is deprived of a statutorily mandated right—one which is part and parcel of the fair trial by jury to

which an accused is entitled. The *Litteral* court concluded its discussion by observing:

"[S]ince it is the duty of the court, and not of the defendant, to protect the jury's rights under section 1138, as the *Butler* court and we have concluded (47 Cal. [App.] 3d at 283–284, 120 Cal.Rptr. 647), defendant cannot be penalized for the court's failure to even make inquiry into what testimony the jury sought." 145 Cal.Rptr. 186, 189.

In this case, then, in light of such authority, and seeing none to the contrary, it was not encumbent upon defense counsel to object to the court's procedure in keeping a jury up all night, or in giving a 3:00 a.m. dynamite charge to get them moving. The jury was entitled to work normal hours, and had they done so, this appeal might not have materialized. However, an improper admonition was administered under the highly unusual circumstances present here, and this appeal resulted.

As intimated at the outset, the real concern in this case is not the injustice done Silcox, but the actions of this Court in placing upon this aberration its Goodhousekeeping Seal of Approval. Practicing attorneys of more than limited experience will readily see that the trial judge's basic mistake in this case was in miscalculating the time which the jurors would need to reach a verdict. Obviously the judge, who had heard the same evidence, believed that a verdict would be reached in short order. But the jury did not do so, and the court found itself in Idaho City with a deliberating jury and no ready place to put them up for the night. At some point in time that jury should have been advised of their rights to retire and resume deliberations on the following day. Surely enough vehicles were available to take the jury to neighboring Boise where lodging could have been found. If not, the trial court, mindful of the right of jurors to come at their task when properly rested to do so, should have realized that he had miscalculated, and at the least should have advised the jury that they were not under any compulsion to put in a 24-hour day without rest, giving them

the option to ask for the discharge to which they were entitled.

It will be unfortunate if other district judges and magistrates see the Court's opinion as a green light to indulge in over-working jurors at the expense of those jurors and with resultant unfair trials to the criminally accused. Hopefully what I have written today may serve as a caution. If not, I would think some legislation in order which in positive terms prevents the marathon jury deliberation which in this case took place.